GUILD WINERIES AND DISTILLER-IES, an agricultural cooperative, Plaintiff–Appellant,

v.

WHITEHALL CO., LTD., a Massachusetts corporation, Defendant–Appellee.

No. 87–1609.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1988.

Decided Aug. 5, 1988.

John J. Hollenback, Jr., Strauss, Neibauer, Anderson & Hollenback, Modesto, Cal., for plaintiff-appellant.

David Rosenberg, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for defendant-appellee.

Before NOONAN and THOMPSON, Circuit Judges, and TEVRIZIAN, District Judge.[*]

DAVID R. THOMPSON, Circuit Judge:

Guild Wineries and Distilleries ("Guild") sought to terminate a distribution contract pursuant to which Whitehall Company, Ltd. ("Whitehall") distributed Guild alcoholic

---

[*] Honorable Dickran M. Tevrizian, Jr., United States District Judge for the Central District of California, sitting by designation.

beverages in Massachusetts. The distribution contract provided that either party could terminate it without cause on thirty days advance notice. The contract also contained a California choice of law provision. Under Massachusetts law, Guild could not terminate the contract except for "good cause shown." Mass.Gen.L. ch. 138, § 25E. California law apparently would permit termination of the contract without cause. Guild brought this action, requesting a declaration that California law governed the contract or that Guild had good cause to terminate Whitehall. Applying California's conflict of law principles, the district court determined that Massachusetts law governed the parties' dispute. The district court gave issue preclusive effect to portions of a decision by the Massachusetts Alcoholic Beverages Control Commission ("ABCC"), and granted summary judgment in favor of Whitehall. Guild appeals. We have jurisdiction under 28 U.S. C. § 1291. We affirm because the ABCC's decision was entitled to claim preclusive effect in the district court proceedings; we do not reach the district court's conflicts of law determination.

I

FACTS AND PROCEEDINGS

Guild is an agricultural cooperative; it produces wine and other related alcoholic beverages from grapes supplied by its member growers. Guild's main offices, production facilities, and member growers are all located in California. Whitehall Company, Ltd. is a liquor wholesaler headquartered in Massachusetts. In October 1982, Guild and Whitehall entered into a "Standard Form Distribution Agreement" prepared by Guild. This contract established Whitehall as Guild's nonexclusive distributor for Guild's alcoholic beverage products in eastern Massachusetts. The agreement, executed in California, called for orders and payments to be made to Guild's California offices and for all products to be shipped f.o.b. from Guild's California warehouses.

The provisions of the contract pertinent to this dispute are articles 5 and 16. Article 5 contains the cancellation provision:

5. CONTINUING TERM OF AGREEMENT AND RIGHTS OF CANCELLATION. This agreement shall continue in force and govern all transactions and relations between the parties hereto until terminated. Either party may terminate this agreement at any time, with or without cause, provided the party desiring to terminate the same gives unto the other a written notice (by registered mail or other means of delivery) delivered to the last known address of the other party, such termination to become effective thirty days after receipt of notice.

Article 16 states the parties' choice of law and venue:

16. LAW OF AGREEMENT. This agreement is to be governed by and construed according to the laws of the State of California and venue for any action entered under the agreement is agreed to be the State of California.

Massachusetts law requires good cause for termination of this kind of distribution contract and makes it an "unfair trade practice" and "unlawful" for a wine grower or manufacturer of alcoholic beverages "to refuse to sell, except for good cause shown, any item having a brand name to any licensed wholesaler to whom such manufacturer [or] winegrower ... has made regular sales of such brand item during a period of six months preceding any refusal to sell." Mass.Gen.L. ch. 138, § 25E. In addition, Massachusetts law requires an out-of-state supplier of alcoholic beverages to obtain a certificate of compliance from the ABCC in order to do business in Massachusetts. *See id.* at §§ 2, 18B. This certificate requires the holder to comply with chapter 138, including the section 25E mandate that a wholesaler, such as Whitehall, not be terminated except for good cause. At all times relevant to this decision, Guild held a certificate of compliance issued by the ABCC.

On August 19, 1985, Guild gave Whitehall notice of its intent to terminate the distribution contract. At the same time, it

filed this diversity action in the district court in California. Guild claimed it was entitled to terminate the distributorship contract with Whitehall without cause. In the alternative, Guild sought a declaration that it had "good cause" for terminating the contract.

On August 27, 1985, Whitehall filed an Application for Relief with the ABCC in Massachusetts seeking a ruling that section 25E governed the relationship between it and Guild. Whitehall alleged that Massachusetts law prohibited Guild from terminating the contract without good cause, and it contended that any inconsistent provision in the distributorship contract was void and unenforceable. Whitehall also alleged that no good cause for termination existed. After filing its application with the ABCC, Whitehall returned to the district court in California and moved for a stay of the district court proceedings so that the ABCC hearing could go forward. The district court granted this motion and stayed proceedings in the district court pending "completion of the administrative proceedings currently before the Massachusetts Alcoholic Beverage Control Commission." [1]

At the ABCC hearings in Massachusetts, both parties were represented by counsel. They contested the issues of whether the ABCC could or should exercise jurisdiction, which law applied, whether Guild had to show good cause to terminate the contract, and if so, whether good cause existed. On February 27, 1986, after two hearings, the ABCC exercised jurisdiction over all the issues presented and found that the parties' relationship was governed by Massachusetts law, that Guild could not terminate Whitehall's distributorship without good cause and that good cause did not exist. The ABCC ordered Guild to continue sales to Whitehall. Guild did not appeal the ABCC decision within the time permitted, and the decision became final.[2] *See* Mass.Gen.L. ch. 30A, § 14.

On August 7, 1986, Guild renewed its motion for summary judgment in the district court in California. Guild conceded that the ABCC decision was controlling insofar as it interpreted Mass.Gen.L. ch. 138, § 25E, determined that the Guild–Whitehall contract was inconsistent with this statute (and therefore unenforceable if the statute applied) and found that "good cause" for the termination under section 25E did not exist. Guild contended, however, that under California law it was entitled to terminate the contract without cause, and California law applied to this issue. Whitehall filed a cross-motion for summary judgment. It argued that the parties' dispute had been resolved by the ABCC and that the ABCC decision should be given *res judicata* effect by the district court. Alternatively, Whitehall contended that even if preclusive effect were not given to the ABCC decision, Massachusetts law applied, and Guild could not terminate it without good cause, which was lacking as the ABCC had determined.

The district court granted summary judgment for Whitehall. It accepted Guild's concession that the ABCC decision was controlling in some respects. The district court also determined that, based on the *res judicata* law of Massachusetts, the ABCC findings of fact and conclusions of law were entitled to issue preclusive effect as to the ABCC's interpretation of the good cause requirement of Mass.Gen.L. ch. 138, § 25E, and as to the ABCC's finding that good cause for termination had not been shown. The district court rejected, however, Whitehall's argument that the ABCC's decision to apply Massachusetts law rather than California law to the dispute should be given *res judicata* effect. Instead, the district court applied California's choice of law principles. The district court concluded that Massachusetts law, which required good cause for termination, was controlling—notwithstanding the California choice of law provision in the con-

---

**1.** Guild does not challenge the district court's decision to stay the federal proceedings to permit the ABCC to render its final decision first.

**2.** Guild attempted to appeal to the federal district court in Massachusetts, but that court dismissed the action on the ground that it did not have jurisdiction to review a state administrative agency decision.

tract. Judgment was entered in favor of Whitehall, and this appeal followed.

## II

### ADMINISTRATIVE ADJUDICATION AS PRECLUSIVE IN A JUDICIAL PROCEEDING

#### A. Federal Law

"We review de novo a district court's ruling on the availability of *res judicata* both as to claim preclusion and as to issue preclusion. *Blasi v. Williams,* 775 F.2d 1017, 1018 (9th Cir.1985) (claim preclusion); *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1519 (9th Cir.1985) (issue preclusion)." *Robi v. Five Platters, Inc.,* 838 F.2d 318, 321 (9th Cir.1988).[3]

Guild argues that the decision of the ABCC should not be given preclusive effect because it is a decision by a state's administrative agency, rather than a court, and the decision has not been reviewed by a court. Guild cites 28 U.S.C. § 1738 as support for this argument.[4] Although section 1738 requires federal courts to give the same preclusive effect to the judgments and records of state courts as they would be given by the state in which they were rendered, *Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373, 380, 105

S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985), it does not apply to administrative decisions that have not been reviewed by a court. *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 3224–25, 92 L.Ed. 2d 635 (1986). The Supreme Court, however, has "fashioned federal common-law rules of preclusion [that apply] in the absence of a governing statute." *Id.* at 3224.[5]

■ The rule of federal common law the Court has developed renders the factual determinations resulting from unreviewed state administrative adjudications preclusive in a subsequent judicial proceeding. *See id.* at 3226–27; *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) (citing other cases).

■ We have held that the federal common law rules of preclusion described in *Elliott* extend to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in *Utah Construction,* 384 U.S. at 422, 86 S.Ct. at 1560. *See Eilrich v. Remas,* 839 F.2d 630, 632–35 & n. 2 (9th Cir.1988);[6] *see also Plaine v. McCabe,* 797 F.2d 713, 719 (9th Cir.1986) ("When an administrative proceeding meets

---

**3.** We prefer to use "claim preclusion" and "issue preclusion" rather than "merger," "bar," and "collateral estoppel." *See Americana Fabrics, Inc. v. L & L Textiles, Inc.,* 754 F.2d 1524, 1529 (9th Cir.1985). "The Supreme Court has encouraged the use of claim preclusion and issue preclusion rather than *res judicata* (as merger or bar) and collateral estoppel, respectively. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894, n. 1, 79 L.Ed.2d 56 (1984)." *Robi,* 838 F.2d at 321.

**4.** Title 28 U.S.C. § 1738 provides in pertinent part:

The records and judicial proceedings of any court of any ... State, Territory or Possession [of the United States], or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such ... records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court

within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

**5.** In *Elliott,* the Court reiterated that Congress intended to provide Title VII plaintiffs with a trial de novo in federal court even if an employee's grievances had been previously adjudicated in an unreviewed state administrative forum. 106 S.Ct. at 3225. Title VII thus constitutes a "governing federal statute" that displaces federal common law. *Id.* at 3224. *Elliott* also held that Congress did not express any intent to remove actions under 42 U.S.C. § 1983 from the common law rules of preclusion. *Id.* at 3225–26.

**6.** Our extension in *Eilrich* of preclusive effect to *legal* decisions necessarily reached by a state administrative agency is supported by prominent commentators. *See* Restatement (Second) of Judgments § 83 (1982); 4 K. Davis, Administrative Law Treatise §§ 21.3, p. 52, 54–55, 21.9, p. 78–79 (2d ed. 1983).

the requirements set forth in *Utah Construction*, it may rise to the level of a 'judicial proceeding' entitled to preclusive effect by section 1738."). The *Utah Construction* requirements are as follows: "When an administrative agency [acts] in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." 384 U.S. at 422, 86 S.Ct. at 1560.

Our "threshold" task in this case is to determine whether the ABCC proceeding contained the characteristics of fairness to all parties which were described by *Utah Construction* as sufficient for *res judicata* to apply through the federal common law expansion of section 1738. *See Plaine*, 797 F.2d at 719. Guild does not dispute that the ABCC was acting in a "judicial capacity" under the authority of Mass.Gen.L. ch. 138 and in accordance with the procedures governing administrative adjudication, Mass.Gen.L. ch. 30A. Nor does Guild claim that it was not offered an adequate opportunity to litigate the issues of fact and law that were ultimately decided by the ABCC.[7] *See id.* Whether or not the choice of law issue was "properly before" the ABCC, within the meaning of *Utah Construction*, requires a more detailed analysis.

■ An issue is properly before an administrative tribunal if that body has jurisdiction to decide it. *See id.* at 720 (issue of "fairness" was properly before California Corporations Commissioner because he had jurisdiction to decide that issue under California law). Massachusetts law permits either the importer (Guild) or the wholesaler (Whitehall) to request a hearing before the ABCC regarding the wholesaler's termination. *See* Mass.Gen.L. ch. 138, § 25E. Whitehall made such a request. Thereafter, "the commission shall make a determination after hearing on the issue of good cause for discontinuance.... The commission shall after notice to all parties and hearing, make a determination on the issue

of good cause and grant such relief as may be appropriate under the circumstances." *Id.* "The commission shall have general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting and selling alcoholic beverages ..." Mass.Gen.L. ch. 6, § 44.

Under the express language of Mass. Gen.L. ch. 138, § 25E, the ABCC had jurisdiction to determine whether Guild had "good cause" to terminate Whitehall. We must also decide, however, whether the ABCC's "general supervision" of importing and exporting under the authority of chapter 6, section 44 and its power to grant appropriate relief in section 25E disputes conferred jurisdiction on the ABCC to determine the validity of the parties' contractual choice of California law. We look to Massachusetts law for our answer.

The Massachusetts Legislature possesses wide latitude to regulate the alcoholic beverage industry. "In dealing with a trade, which, because of its great potential evils, can be wholly prohibited, a wide power is given to the Legislature with respect to the delegation of discretionary powers." *Connolly v. Alcoholic Beverages Control Comm'n*, 334 Mass. 613, 619, 138 N.E.2d 131 (1956). Moreover, the Massachusetts Legislature has delegated its authority over regulating alcoholic beverages to the ABCC in general terms. The language in chapter 6, section 44 is broad. The legislative policy behind chapter 138, section 25E is equally general. *See Seagram Distillers Co. v. Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 716–17, 519 N.E. 2d 276, 279 (1988) ("In sum, the statute serves as a vehicle by which the commission may reconcile the competing equities between suppliers and wholesalers of liquor in the Commonwealth. (citations omitted)").

Massachusetts courts defer to agency interpretations of statutes that they administer; special deference is given when the statute broadly lays out a legislative policy. *See Consolidated Cigar Corp. v. Department of Public Health*, 372 Mass. 844, 850,

---

7. Our *Eilrich* decision leads us to reinterpret the phrase "disputed issues of fact" in *Utah Con-*

*struction* to encompass disputed issues of law as well. *See* 839 F.2d at 633–34 & n. 2.

364 N.E.2d 1202, 1207 (1977) ("The importance of an administrative interpretation of a statute is 'never greater than where, as here, an agency must interpret a legislative policy which is only broadly set out in the governing statute.'" (citations omitted)); *see also Seagram Distillers*, 401 Mass. at 718, 519 N.E.2d at 280 (statutory interpretation by ABCC is accorded deference); *School Comm. of Wellesley v. Labor Relations Comm'n*, 376 Mass. 112, 116, 379 N.E.2d 1077, 1079 (1978) (following *Consolidated Cigar*).

We conclude that the Massachusetts Legislature intended the ABCC to have jurisdiction over the issue of what law should govern a liquor distribution contract that provides for the supply of alcoholic beverages by an out of state supplier to a Massachusetts wholesaler. To decide otherwise would seriously undercut the effectiveness of the ABCC to "generally supervise" the importing, transporting and selling of alcoholic beverages. This delegation of judicial power to the ABCC is consistent with the Legislature's exercise of its own authority in this highly regulated area of commerce.

The ABCC considered and rejected Guild's argument that it should not exercise jurisdiction. The ABCC addressed the conflict of law issue and determined that it was "the appropriate forum for first instance resolution of the issues presented, and the commission can, should, and does exercise jurisdiction." We extend the same deference to the ABCC's statutory interpretation as it would receive in the Massachusetts courts. Our deference to the ABCC's determination that it had jurisdiction, combined with our reading of the ABCC enabling legislation, convince us that the ABCC properly exercised jurisdiction to determine the validity of the contract provision here at issue.

Three further observations support our conclusion. First, the Legislature has given the ABCC broad remedial powers that could only be carried out if the Legislature also intended the ABCC to have jurisdiction over the conflicts of law issue present in this case. The ABCC was created by the Massachusetts Legislature. As such, "it

has 'only the powers, duties and obligations expressly conferred upon it by ... statute ... or such as are reasonably necessary ... [to carry out] the purpose for which it was established.'" *Saccone v. State Ethics Comm'n*, 395 Mass. 326, 480 N.E.2d 13, 18 (1985) (quoting as indicated from *Hathaway Bakeries, Inc. v. Labor Relations Comm'n*, 316 Mass. 136, 141, 55 N.E.2d 254, 256 (1944)). In the dispute before us, no statute expressly authorizes the ABCC to resolve legal disputes that go beyond the application of Massachusetts' liquor laws to a particular factual setting. Nevertheless, "[a]n agency's powers are shaped by its organic statute taken as a whole and need not necessarily be traced to specific words." *Commonwealth v. Cerveny*, 373 Mass. 345, 354, 367 N.E.2d 802, 808 (1977); *see also Leavy v. Board of Registration and Discipline in Medicine*, 378 Mass. 519, 524–27, 392 N.E.2d 1036, 1039–41 (1979) (applying *Cerveny* analysis).

Section 25E permits the ABCC to grant any appropriate relief under the circumstances present in a particular dispute. If the ABCC were not permitted to determine which law governs the interpretation of the parties' contract, it would not be able to grant appropriate relief. For example, if Guild did not have good cause to terminate Whitehall, appropriate relief could not be granted without determining whether California or Massachusetts law applied. Thus, although the grant of broad remedial powers cannot establish jurisdiction where none exists, the ABCC's extensive remedial powers under section 25E bolster our conclusion that the ABCC did not exceed the Legislature's grant of jurisdiction to "supervise" the industry in this case. In the context of regulating the importation of alcoholic beverages, it makes sense that the ABCC has jurisdiction to pass on the validity of contracts that involve foreign corporations (subject to review in the Massachusetts courts).

Second, the Massachusetts Supreme Judicial Court has held that the ABCC has broad jurisdiction to promulgate regulations governing the industry. In the course of affirming the ABCC's power to promulgate a particular regulation, the

Massachusetts Supreme Judicial Court made the following statement: "An examination of the various provisions of c. 138, as amended, compels the conclusion that the statute was intended to give the commission comprehensive and exclusive jurisdiction over the conduct of [alcoholic beverage] businesses." *Universal Machine Co. v. Alcoholic Beverages Control Comm'n,* 301 Mass. 40, 44, 16 N.E.2d 53, 55 (1938). Third and finally, holding that the ABCC had jurisdiction over the conflict of law issue is consistent with Massachusetts' emphasis that the "finality" of once-litigated issues be shielded from collateral attack. "The public interest in enforcing limitations on courts' subject matter jurisdiction is ordinarily served adequately by permitting direct attack on judgments." *Harker v. Holyoke,* 390 Mass. 555, 558, 457 N.E.2d 1115, 1117 (1983); *see also Heacock v. Heacock,* 402 Mass. 21, 23–24, 520 N.E.2d 151, 152–53 (1988) (discussing finality).

## B. *Massachusetts Law*

■ Having satisfied our threshold inquiry under *Utah Construction,* we now turn to the traditional *res judicata* analysis to determine if, under the law of Massachusetts, the ABCC's decision would be given preclusive effect in Massachusetts. *See Plaine v. McCabe,* 797 F.2d 713, 719 (9th Cir.1986). Under Massachusetts law, claim preclusion applies when the same parties have had a fair opportunity to litigate the same cause of action, a final judgment has been rendered and appeal has not been taken. *See Heacock,* 402 Mass. at 23–25, 520 N.E.2d at 151–53 (claim preclusion); *Massachusetts Medical Soc'y v. Commissioner of Ins.,* 402 Mass. 44, 53, 520 N.E.2d 1288, 1294 (1988) (finality); *Harker,* 390 Mass. at 557–61, 457 N.E.2d at 1116–18 (1983) (effect of failure to seek review); *Franklin v. North Weymouth Cooperative Bank,* 283 Mass. 275, 279–80, 186 N.E. 641, 643 (1933). Neither the identity of the causes of action nor the fact that the parties are the same is disputed in the present case. The hearing before the ABCC was conducted under the Massachusetts Administrative Procedure Act. *See* Mass.Gen.L. ch. 30A. The ABCC hearing was an "adjudicatory proceeding" within the meaning of Mass.Gen.L. ch. 30A, § 1. Adjudicatory proceedings "shall afford all parties an opportunity for full and fair hearing." Mass. Gen.L. ch. 30A, § 10; *see also id.* at § 11 (describing procedural guarantees). The Massachusetts Supreme Judicial Court has applied *res judicata* to decisions resulting from unreviewed agency adjudications conducted under standards less rigorous than or equal to those in chapter 30A. *See Almeida v. Travelers Ins. Co.,* 383 Mass. 226, 229–31, 418 N.E.2d 602, 604–05 (1981) (issue preclusion applied to dispute resolved by a "summary hearing"). Thus, chapter 30A provides sufficient guaranties of full and fair litigation under the *res judicata* law of Massachusetts to justify treating decisions rendered under chapter 30A as claim preclusive. And, as we have noted, Guild did not pursue the avenue of direct appeal within the Massachusetts courts that was available to it, and the decision became final. *See* Mass.Gen.L. ch. 30A, § 14.

■ Guild argues that we cannot treat the unreviewed ABCC decision as claim preclusive because doing so would remove Guild's right to have its claims adjudicated in a properly invoked federal diversity action. Applying claim preclusion, however, does not remove federal jurisdiction; it simply affects how a federal court exercises its jurisdiction. In *Eilrich v. Remas,* 839 F.2d 630 (9th Cir.1988), we exercised jurisdiction by affirming the district court's grant of summary judgment based on the issue preclusive effect of a final decision in an unreviewed administrative adjudication. *See also Plaine v. McCabe,* 797 F.2d 713, 718–21 (9th Cir.1986) (same). Nor is it relevant that the administrative complaint in this case was filed after the federal diversity action. The date of judgment, not the date of filing, controls the application of *res judicata* principles. *See Americana Fabrics v. L & L Textiles, Inc.,* 754 F.2d 1524, 1529 (9th Cir.1985); *Wright Machine Corp. v. Seaman–Andwall Corp.,* 364 Mass. 683, 690, 307 N.E.2d 826, 831 (1974).

Guild also argues that the ABCC's determination of the conflict of laws issue should not be given preclusive effect because the ABCC misanalyzed this issue. Attacking the validity of the ABCC's deci-

sion because of alleged faulty reasoning must be pursued on direct appeal and does not justify denying claim preclusive effect to the ABCC decision. *See Harker,* 390 Mass. at 558–61, 457 N.E.2d at 1117–18 (1983).

## III

## CONCLUSION

The Massachusetts ABCC had jurisdiction to determine the issues presented to it by the parties, including the choice of law issue. Its decision and order were rendered by it, acting in its judicial capacity, after a fair hearing. A Massachusetts court would give the ABCC decision claim preclusive effect. The district court was required to do the same. The district court nonetheless came to the correct conclusion, as it would have if it had given the ABCC decision claim preclusive, as opposed to selective issue preclusive, effect. "[W]e may affirm on any ground finding support in the record." *Islamic Republic of Iran v. Boeing Co.,* 771 F.2d 1279, 1288 (9th Cir. 1985), *cert. dismissed,* 479 U.S. 957, 107 S.Ct. 450, 93 L.Ed.2d 397 (1986). We therefore affirm based on the claim preclusive effect of the ABCC decision.

AFFIRMED.