977 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WATTS AGRICULTURAL AVIATION, INC., dba Growers Air Service, Petitioner,
v.
James B. BUSEY, Administrator, Federal Aviation
Administration, Respondent.
 No. 91-70365.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 17, 1992.
Decided Oct. 1, 1992.
 
 Before WALLACE, Chief Judge, and SCHROEDER and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Watts Agricultural Aviation, Inc. (Watts) petitions for review of an order of the Administrator of the Federal Aviation Administration (Administrator) upholding an ALJ's decision imposing a civil penalty upon Watts. Watts contends that the Administrator's decision is not supported by substantial evidence and that the penalty imposed is barred by the issue preclusion doctrine. We have jurisdiction pursuant to 49 U.S.C. § 1486(a). We deny the petition for review.
 
 FACTS
 
 3
 On July 2, 1988, petitioner's SNOW Airtractor aircraft, No. N5224S, became involved in an accident. The FAA dispatched safety inspector Gordon Read to the site on July 6, 1988. Read completed an on-site inquiry into the accident and discovered several violations of FAA rules. The FAA issued a civil penalty order assessing a fine of $1,750 against Watts on May 17, 1989. The basis of the sanction was a finding that Watts had operated its aircraft when it was not in an airworthy condition and for failing to maintain appropriate maintenance and inspection records. Specifically, the FAA found that Watts failed to maintain:
 
 
 4
 (1) a "current status of applicable airworthiness," including method of compliance, airworthiness directive (AD) number, and revision date;
 
 
 5
 (2) a copy of FAA form 337, applicable to alterations to the propeller;
 
 
 6
 (3) required fuel placards on the aircraft wing; and
 
 
 7
 (4) a current weight and balance report and equipment list. The FAA also found that the safe-life of the wing "carry through structure" was exceeded by 754 hours.
 
 
 8
 Watts sought a hearing on the charges before an Administrative Law Judge (ALJ). The ALJ ruled in favor of the FAA on all charges except the allegation that Watts had not maintained a current weight and balance report and equipment list and reduced the penalty to $1,400. Watts appealed to the Department of Transportation, and on April 10, 1991, the Administrator upheld the ALJ's decision. Watts filed a timely petition for review on June 6, 1991.
 
 STANDARD OF REVIEW
 
 9
 We must accept as conclusive the Administrator's findings of fact if they are supported by substantial evidence. Janka v. Department of Transportation, 925 F.2d 1147, 1149 (9th Cir.1991); 49 U.S.C. App. § 1486(e).
 
 
 10
 Substantial evidence means "more than a mere scintilla", but "less than a preponderance." It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In determining whether there is substantial evidence to support the [Administrator's] decision, [the court is] required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the [Administrator's] decision.
 
 
 11
 McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir.1989) (internal citations omitted).
 
 
 12
 We must affirm if " 'there is such relevant evidence as reasonable minds might accept as adequate to support a conclusion....' " Webb v. Lujan, 960 F.2d 89, 93 (9th Cir.1992) (quoting Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir.1987)). We give "great deference" to the ALJ's credibility determinations that were in turn upheld by the Administrator. Sierra Club v. Nuclear Regulatory Comm'n, 862 F.2d 222, 230 (9th Cir.1988).
 
 
 13
 Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), we may reverse the Administrator's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." We will not find such a flaw unless the Administrator has committed a clear error of judgment or failed to base his decision on consideration of the relevant factors. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971).
 
 
 14
 We review questions of law de novo, Go Leasing, Inc. v. National Transportation Safety Board, 800 F.2d 1514, 1517 (9th Cir.1986), including the question whether issue preclusion applies. Guild Wineries & Distilleries v. Whitehall Co., Ltd., 853 F.2d 755, 758 (9th Cir.1988) (citing Davis & Cox v. Summa Corp., 751 F.2d 1507, 1519 (9th Cir.1985)). However, we afford a high degree of deference to the FAA's interpretation of the Federal Aviation Act and the Federal Aviation Regulations. See Oregon v. Bureau of Land Management, 876 F.2d 1419, 1425 (9th Cir.1989).
 
 ANALYSIS
 
 15
 I. Are the factual findings of the Administrator supported by substantial evidence and are his interpretations of FAA regulations an abuse of discretion?
 
 
 16
 Federal Aviation Regulation 91.29(a), 14 C.F.R. § 91.29(a) (1989), provides that "[n]o person may operate a civil aircraft unless it is in an airworthy condition."[1] Federal Aviation Regulation § 91.173(a), 14 C.F.R. § 91.173(a),[2] provides:
 
 
 17
 Except for work performed in accordance with § 91.171, each registered owner or operator shall keep the following records for the periods specified in paragraph (b) of this section:
 
 
 18
 (1) Records of the maintenance, preventive maintenance, and alteration ... for each aircraft (including the airframe) and each engine, propeller, rotor, and appliance of an aircraft. The records must include--
 
 
 19
 (i) A description (or reference to data acceptable to the Administrator) of the work performed;
 
 
 20
 (ii) The date of completion of the work performed; and
 
 
 21
 (iii) The signature and certificate number of the person approving the aircraft for return to service.
 
 
 22
 (2) Records containing the following information:
 
 
 23
 (i) The total time in service of the airframe, each engine, and each propeller.
 
 
 24
 (ii) The current status of life-limited parts of each airframe, engine, propeller, rotor, and appliance.
 
 
 25
 ...
 
 
 26
 (v) The current status of applicable airworthiness directives (AD), including, for each, the method of compliance, the AD number, and revision date. If the AD involves recurring action, the time and date when the next action is required [must also be included].
 
 
 27
 (vi) Copies of the forms prescribed by § 43.9(a) of this chapter for each major alteration to the airframe and currently installed engines, rotors, propellers, and appliances.
 
 
 28
 Watts asserts that each of the four violations found by the ALJ and affirmed by the Administrator are not supported by the evidence or are based on incorrect interpretations of FAA rules.
 
 A. Incomplete Airworthiness Directive Notes
 
 29
 The ALJ found that Watts did not list in its records required "revision dates."[3] The Administrator was aware of this finding and it was one of the issues that he reviewed. However, in his decision the Administrator stated that Watts' "AD notes were incomplete because ... they did not include the revision numbers of the AD's with which [Watts] had complied." Watts pounces on this statement, pointing out that its records indisputably did contain such "revision numbers."[4] Watts asserts that this is a basis for overturning the Administrator's finding on this point.
 
 
 30
 We reject the argument because the Administrator's discussion of the facts indicates that he was aware that the "revision dates" were at issue and that the ALJ had found that it was that information which was not included in Watts' records. Neither Watts nor the FAA raised any issue of the revision numbers in briefs to the Administrator. The Administrator's mistake in mentioning "revision numbers" instead of "revision dates" is therefore harmless because the lack of "revision dates" was the only reasonable conclusion that could be reached based upon the record before him. See Brawner v. Secretary of Health & Human Serv., 839 F.2d 432, 434 (9th Cir.1988).
 
 
 31
 Watts alternatively argues that the evidence shows that it was in compliance with airworthiness directives at the time of the accident. This argument also fails to undermine the Administrator's finding that the records requirement was not met. Inspector Read testified that Watts had not listed revision dates for two particular airworthiness directives. He told the ALJ that he had examined the aircraft's maintenance logs and had found no revision dates for any entries. Watts does not dispute that testimony. Accordingly, the ALJ, followed by the Administrator, found that the FAA proved a violation regardless of Watt's actual compliance with airworthiness directives.
 
 
 32
 We decline to reverse that finding. The language of the Federal Aviation Regulations indicates that it is the failure to maintain records that constitutes a violation, and an aircraft operator's failure to maintain such records is not a trivial matter. "A policy of leniency toward recordkeeping inevitably encourages carelessness in the timely performance of required maintenance, to the derogation of safety...." Administrator v. Newman, 1 NTSB 2008, 2010 (1972), pet. for review denied, 494 F.2d 1219 (2d Cir.1974).
 
 B. FAA Form 337
 
 33
 Inspector Read determined that Watts had significantly modified the propeller on N5224S to install rollerbearings. The FAA requires the aircraft operator to complete and retain a record of major alterations. 14 C.F.R. § 91.173(a)(2)(vi). The rule specifies that the operator must retain a form--referred to as "Form 337"--prescribed by 14 C.F.R. § 43.9(a)(4) and the Appendix to 14 C.F.R. pt. 43 and completed by the entity that performs the alteration to the propeller.
 
 
 34
 Watts does not dispute that it did not have a copy of form 337 when Read inspected N5224S. However, Watts asserts that a log entry certifying that the propeller on its aircraft was airworthy and suitable for flying (a "yellow tag"), prepared and logged by the entity performing the alteration to the propeller, was sufficient to comply with the FAA's requirement that a special form recording alterations to the propeller be retained. We reject Watts' argument.
 
 
 35
 First, the rule requiring a specific form and entry of the alteration into a permanent maintenance record ensures that inspectors, pilots, and maintenance personnel will be aware of conditions that could affect the aircraft's airworthiness. The "yellow tag" is not an adequate substitute because it does not insure that the aircraft's maintenance records will reflect alterations to the propeller. See Newman, 494 F.2d at 1220; cf. Erickson, 758 F.2d 285, 290 (8th Cir.1985) (noting "strong policy concern for public safety" that motivates sanctions for violating recordkeeping rules). Watts' argument that the "yellow tag" suffices to comply is inconsistent with the FAA's goal of ensuring the maximum possible knowledge of potential flight hazards.[5] Second, the rule requires the operator, not the mechanic enlisted to perform the repair, to undertake the responsibility to obtain and keep the mandated alteration records. See Administrator v. Fleischman, NTSB Order No. EA-2962, at 10-11 (July 28, 1989), aff'd, No. 89-70367 (9th Cir., March 1, 1991).
 
 C. Wing spar safe-life
 
 36
 The Administrator upheld the ALJ's finding that the "safe life" of the "carry-through structure," or spar, of one of the wings on N5224S was exceeded by 754 hours.[6] This is a violation of 14 C.F.R. § 91.29(a) (operating an aircraft in an unairworthy condition). The maximum safe flight time for a spar of the type on Watts' aircraft is 5,000 hours; Inspector Read testified that the aircraft's tachometer indicated that the plane had accumulated 5,754 miles at the time of the accident. The FAA agrees that the tachometer may not be an accurate measure of the actual air mileage recorded by the aircraft, but asserts that it will use the tachometer as a measurement for safety purposes if the operator does so. Watts argues that no violation of § 91.29(a) occurred because the actual flight time of the aircraft was less than 5,000 hours. We do not think Watts has shown that the ALJ's finding on this point is unsupported by substantial evidence or that FAA has abused its discretion in relying on the tachometer reading to measure air mileage.
 
 
 37
 First, the concern for accurate recordkeeping and its effect on safety dictates that the FAA be permitted to rely upon the method of recording time in service selected by the aircraft operator. Uncertainty as to the actual condition of aircraft components could lead an inspector or maintenance personnel to conclude that work due to be done can be performed later or even that it need not be done at all. It is difficult to see how the FAA abuses its discretion in relying on the operator's chosen method given that the operator is in the best position to know the most accurate way of keeping track of needed maintenance or repairs.
 
 
 38
 The same overriding concern for safety justifies FAA skepticism when an operator appears to be in violation of a safety standard but asserts that the objective indication of the violation provided by the tachometer is in error. Here Watts was afforded a hearing at which it could demonstrate that in fact the tachometer was an unreliable recorder of actual flight time, but failed to convince the ALJ that any inaccuracy in fact existed. Watts' assertion that N5224S actually had flown less than 5,000 miles was supported by two expert witnesses who testified that consideration of the average airspeed of the aircraft was the basis of the air mileage figure.
 
 
 39
 The FAA inspector, however, testified that he had discovered physical evidence that the safe life of the spar was exceeded and that it was not correct to base a calculation of flight mileage on average airspeed since the airplane engine's speed drops substantially during aircraft descent. Watts also failed to introduce any evidence at the hearing that it had consciously decided not to modify or alter the spar when the 5,000 mile threshold on the tachometer was reached. The ALJ and Administrator also specifically found that Watts had not established or followed any other way of recording flight miles. The ALJ's decision that Watts failed to prove any inaccuracy was accordingly a credibility determination and is due substantial deference. Here there is no basis in the record to doubt its correctness.
 
 D. Fuel Placards
 
 40
 The FAA also alleged that Watts violated § 91.29(a) by failing to display fuel placards on the wings of N5224S. Inspector Read testified at the hearing that he could find no placard "readable on the fuel access caps." Watts argues that the regulation permits the placards to be placed near the caps and therefore no violation was established. The Administrator's ruling upholding the ALJ's determination that a violation occurred is supported by substantial evidence. In examining the fuel cap area of the wings Read would have seen any placard located next to the caps. He testified that he saw none, and Watts does not actually assert that placards were in place near the fuel caps.
 
 
 41
 II. Was the ALJ's ruling barred by the issue preclusion doctrine?
 
 
 42
 Watts argues that the issue preclusion doctrine[7] bars the FAA's attempt in this case to enforce its rules. Watts asserts that similar allegations as those involved in this case were resolved against the FAA in In re Dabaghian, FAA Docket No. CP-89-WP-0277 (December 4, 1989). There, the FAA ordered a civil penalty imposed upon a mechanic for approving N5224S to return to service when the fuel placards were not visible and unreadable and the wing spar's safe life had been exceeded. The ALJ overturned the penalty, holding that Dabaghian had replaced the fuel placards and that the conflicting testimony regarding the accuracy of the aircraft tachometer foreclosed a finding that the safe-life of the wing spar had been exceeded.
 
 
 43
 "Collateral estoppel ... has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).[8] Thus, once an administrative tribunal has decided an issue of fact or law necessary to its judgment, relitigation of that issue in a different suit involving the same party is prohibited. Montana v. United States, 440 U.S. 147, 153 (1979). Accordingly, the findings of the Dabaghian ALJ with respect to the fuel placard and wing spar violations would bar relitigation of those issues in this case if:
 
 
 44
 (1) there is identity of the parties or their privies;
 
 
 45
 (2) there is identity of the issues;
 
 
 46
 (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding;
 
 
 47
 (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and
 
 
 48
 (5) the findings on the issues to be estopped were necessary to the administrative decision.
 
 
 49
 Pantex Towing Corp. v. Glidewell, 763 F.2d 1241, 1245 (11th Cir.1985) (citing United States v. Utah Constr. & Mining Co., 384 U.S. 394, 421-22 (1966)); see also Mayeske v. International Assoc. of Fire Fighters, 905 F.2d 1548, 1553 (D.C.Cir.) (Thomas, J.), cert. denied, 111 S.Ct. 347 (1990).
 
 
 50
 The fuel placard and wing spar safe-life issues in this case are not barred by the issue preclusion doctrine. The Dabaghian ALJ determined that the mechanic had not failed to record a lack of a properly placed fuel placard before certifying the aircraft for further service upon performing a regular inspection sometime before the July 2, 1988 accident; he did not decide that the fuel placards were in place at the time of the accident.
 
 
 51
 The parties did not have a full and fair opportunity to litigate the question of the wing-spar safe-life issue in Dabaghian. The ALJ in that case indicated that Dabaghian had submitted some evidence that indicated inaccuracy in the tachometer's air mileage readings, but the FAA apparently did not attempt to show that the readings were accurate. Furthermore, the issue before the Dabaghian court was whether the mechanic had certified the plane for service without ensuring that the safe-life had not been exceeded. That is not the same as determining whether in fact the safe-life was exceeded.[9]
 
 
 52
 Watts emphatically asserted at oral argument that FAA is attempting to circumvent the issue preclusion doctrine by refusing to give preclusive effect to ALJ decisions adverse to the agency that were not appealed. However, the Administrator concedes in his brief that this is not a proper basis for declining to invoke the issue preclusion doctrine. Accordingly, we need not resolve the issue.
 
 CONCLUSION
 
 53
 The petition for review is DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Now codified at 14 C.F.R. § 91.7
 
 
 [2]
 Now codified at 14 C.F.R. § 91.417
 
 
 [3]
 A "revision date" is an indication of the status of an airworthiness directive at the time such a directive was complied with. The purpose of requiring its listing is to permit pilots and aircraft operators to determine whether timely inspections have been performed and to help inspectors take account of the impact of revisions to an airworthiness directive. Cf. Newman v. Shaffer, 494 F.2d 1219, 1220 (2d Cir.1974)
 
 
 [4]
 Watts' records contain the following entries:
 82-06-12 complied with 11 May 1982 tachtime 2394.73 PEW
 83-18-01 complied with 11/24/83 tach 3340 Peter Dabaghian
 82-06-12 reoccurring 2,000 hours changed gear tach 3970 B.M.
 
 
 [5]
 We also reject Watts' argument that it did not know of the modification to the propeller because the "yellow tag" does not necessarily indicate that the part was modified. Watts asserted at the hearing before the ALJ that it relied on the issuance of the "yellow tag" to indicate that N5224S was safe for further flying. The ALJ determined that Watts knew of the repair to the propeller in part because it found testimony otherwise not credible. Watts offers no reason why we should doubt that finding
 
 
 [6]
 As we understand it, the wing spar is the structural component of the aircraft where the two wings are joined. It therefore bears the brunt of the weight carried by the aircraft in flight. When the safe life of the spar is exceeded it could crack or become subject to "stress corrosion."
 
 
 [7]
 In Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984), the Supreme Court encouraged the use of the term "issue preclusion," rather than "collateral estoppel." We have followed the Court's advice. See Guild Wineries, 853 F.2d at 758 n. 3 (citing Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir.1988))
 
 
 [8]
 The issue preclusion doctrine applies to administrative decisions. See United States v. Utah Constr. Co., 384 U.S. 394, 421-22 (1966); Plaine v. McCabe, 797 F.2d 713, 719 (9th Cir.1986)
 
 
 [9]
 Watts' contention that the FAA is attempting to enforce a new regulation retroactively lacks merit. The regulation which FAA says Watts violated was re-issued in identical form after the District of Columbia Circuit ordered the FAA to properly complete all rulemaking efforts and held all FAA civil penalty proceedings in abeyance in the interim. See Air Transport Assn. v. Department of Transportation, 900 F.2d 369 (D.C.Cir.1990), vacated and remanded, 111 S.Ct. 944 (1991), vacated on remand, 933 F.2d 1043 (D.C.Cir.1991). Thus, Watts suffered no prejudice as a result of its enforcement