**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE MENDOZA, JR., individually and as a member and representative of the Amalgamated Transit Union Local 1637,

*Plaintiff-Appellant*,

v.

AMALGAMATED TRANSIT UNION INTERNATIONAL; JAMES LINDSAY III, individually and in his official capacity as ATU International Vice President and Trustee; LAWRENCE HANLEY, individually and in his official capacity as International Union President; ANTONETTE BRYANT, individually and in her official capacity as International Representative and Hearing Officer; TERRY RICHARDS; CAROLYN HIGGINS; KEIRA MCNETT; DANIEL SMITH; TYLER HOME,

*Defendants-Appellees.*

No. 20-16079

D.C. Nos.
2:17-cv-02485-JCM-CWH
2:18-cv-00959-JCM-DJA
(Consol.)

JOSE MENDOZA, JR.; ROBBIE
HARRIS; ROBERT NAYLOR; MYEKO
EASLEY; DENNIS HENNESSEY; GARY
SANDERS; LINDA JOHNSON-
SANDERS; CESAR JIMENEZ,
individually and each as members
and on behalf of Amalgamated
Transit Union Local 1637
membership, and as majority of the
Local 1637 Executive Board,
          *Plaintiffs-Appellants*,

v.

AMALGAMATED TRANSIT UNION
INTERNATIONAL; JAMES LINDSAY III,
individually and as ATU
International Vice President and
Trustee; LAWRENCE HANLEY,
individually and as ATU
International Union President;
ANTONETTE BRYANT, individually
and as Hearing Officer; RICHIE
MURPHY, individually and as
International Vice President; KEIRA
MCNETT, individually and as ATU
Associate General Counsel; DANIEL
SMITH, individually and as ATU
Associate General Counsel; TYLER
HOME, individually and as ATU
Auditor; KEOLIS TRANSIT AMERICA
INC.; KEVIN MANZANARES,
individually, and as an employee of
Keolis; MILLER KAPLAN & ARASE, a

No. 20-16080

D.C. No.
2:18-cv-00959-
JCM-DJA

OPINION

limited liability partnership; ANN
SALVADOR, individually and as an
employee of MKA; ALEXANDER
CHERNYAK, individually and as an
employee of MKA,
          *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted June 11, 2021
Seattle, Washington

Filed April 7, 2022

Before:  William A. Fletcher, Paul J. Watford, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins

# SUMMARY[*]

## Labor Law

The panel affirmed the district court's dismissal of labor law claims as barred by the doctrine of claim-splitting.

These appeals arose from two overlapping suits challenging a national union's imposition of a trusteeship over one of its local unions. After discovering apparent financial malfeasance by Jose Mendoza, then president of Local 1637, the Amalgamated Transit Union ("ATU") imposed the trusteeship, thereby removing Mendoza and the other Local 1637 executive board members from office. Mendoza filed a single-plaintiff action ("*Mendoza I*") against ATU and several of its officers. Later, while that action was still pending, Mendoza filed a second, multi-plaintiff action ("*Mendoza II*") in which he and a majority of the other former executive board members of Local 1637 asserted related claims against ATU, the same ATU officers, and several other defendants.

The panel affirmed the district court's dismissal of all claims against ATU and its officers in *Mendoza II* as barred by claim-splitting. The panel held that, with respect to the claims against ATU and its officers, the additional plaintiffs in *Mendoza II* were adequately represented by Mendoza in *Mendoza I*. Because the claims against these defendants in the two cases otherwise involved the same causes of action and the same parties, the assertion of those claims in the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

second suit (*Mendoza II*) violated the doctrine of claim-splitting.

The panel resolved remaining issues in a concurrently filed memorandum disposition.

## COUNSEL

Michael J. Mcavoyamaya (argued), Las Vegas, Nevada, for Plaintiffs-Appellants.

April H. Pullium (argued) and Ramya Ravindran, Bredhoff & Kaiser PLLC, Washington, D.C., for Defendants-Appellees Amalgamated Transit Union International, James Lindsay III, Lawrence Hanley, Antonette Bryant, Terry Richards, Carolyn Higgins, Keira McNett, Daniel Smith, Tyler Home, and Richie Murphy.

Laurent R. G. Badoux (argued), Buchalter, Scottsdale, Arizona, for Defendants-Appellees Keolis Transit America Inc. and Kevin Manzanares.

Efren A. Compeán (argued) and Stephen J. Tully, Garrett & Tully PC, Pasadena, California, for Defendants-Appellees Miller Kaplan & Arase LLP, Ann Salvador, and Alexander Chernyak.

## OPINION

COLLINS, Circuit Judge:

These consolidated appeals arise from two overlapping suits challenging a national union's imposition of a trusteeship over one of its local unions. After discovering apparent financial malfeasance by Jose Mendoza, then president of Local 1637, the Amalgamated Transit Union ("ATU") imposed the trusteeship, thereby removing Mendoza and the other Local 1637 executive board members from office. In September 2017, Mendoza filed a single-plaintiff action ("*Mendoza I*") against ATU and several of its officers. In May 2018, while that action was still pending, Mendoza filed a second, multi-plaintiff action ("*Mendoza II*") in which he and a majority of the other former executive board members of Local 1637 asserted related claims against ATU, the same ATU officers, and several other defendants. The district court dismissed all claims against ATU and its officers in *Mendoza II*, concluding that they were barred by the doctrine of claim-splitting. After rejecting all remaining claims in rulings on motions to dismiss or for summary judgment, the district court entered judgment in favor of Defendants. Plaintiffs timely appealed.

In this opinion, we address only the district court's ruling on claim-splitting, and we resolve all remaining issues in a concurrently filed memorandum disposition. As to claim-splitting, we hold that, under the unusual facts of this case, the district court correctly concluded that, with respect to the claims against ATU and its officers, the additional Plaintiffs in *Mendoza II* were adequately represented by Mendoza in *Mendoza I*. Because the claims against these Defendants in the two cases otherwise involved the same causes of action and the same parties, the assertion of those claims in the

second suit (*Mendoza II*) violated the doctrine of claim-splitting.  We therefore affirm the district court.

## I

## A

Because the claim-splitting issue was raised in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we may "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice," as well as any "writing referenced in [the] complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Based on those materials, we take the following facts as true for purposes of reviewing the district court's ruling on the claim-splitting issue.

Local 1637, an affiliate of ATU, is a union in Las Vegas, Nevada that represents coach operators and mechanics. After receiving various complaints from Local 1637 members Terry Richards and Carolyn Higgins about alleged financial malfeasance by the Local's President, Jose Mendoza, the ATU on April 10, 2017 imposed a temporary trusteeship over Local 1637.  The letter from ATU International President Lawrence Hanley that informed Local 1637 of the temporary trusteeship cited a variety of alleged "issues severely impacting the effective administration and functioning of Local 1637."  Chief among these was the allegation that Mendoza had been overpaid in terms of his salary and vacation pay.  The letter further stated that, by operation of the ATU's Constitution and General Laws ("CGL"), this "imposition of the trusteeship automatically suspends all officers and executive board members of the local union from office."  ATU

International Vice President James Lindsay was designated as the trustee of Local 1637.

In May 2017, the ATU held a two-day evidentiary hearing to determine whether the trusteeship was justified and should be continued. The hearing was overseen by Antonette Bryant, an ATU representative, together with assistance from two members of ATU's General Counsel's Office, Keira McNett and Daniel Smith. Mendoza represented Local 1637 at the hearing. Mendoza presented an opening statement, sworn testimony, and a closing statement, and he submitted a post-hearing statement as well. Mendoza also cross-examined several witnesses called by ATU. Bryant concluded that the trusteeship was justified, and her conclusions were upheld by the ATU General Executive Board in June 2017. As a result, pursuant to the CGL, the board members were formally removed from their positions and the trusteeship remained in place until new officer elections were held in May 2018.

In her report explaining why the trusteeship was warranted, Bryant relied on the following five grounds, all of which exclusively or overwhelmingly rested upon malfeasance on the part of Mendoza.

First, Mendoza had been overpaid more than $140,000 over an approximately six-year period. Specifically, Mendoza's salary was at a rate of pay higher than the bylaws allowed, and he was paid for more vacation time than he was entitled.

Second, Local 1637 had failed for years to conduct required annual audits, despite ATU's specific reminders to Mendoza and the Local 1637 board. When an ATU auditor, Tyler Home, conducted a thorough accounting, he uncovered a pattern of improper expense reimbursements,

particularly to Mendoza. He also learned that Mendoza had been improperly receiving a $250 monthly advance on reimbursable expenses as well as reimbursement "for the cost of his home internet service," and that Mendoza and another local officer had made improper withdrawals of cash.

Third, Local 1637 persistently failed to achieve a quorum at its meetings, with the result that, as one ATU official put it, "Whatever the president [Mendoza] wants, the executive board goes along with." Members of the Local also complained that, at meetings, Mendoza referred to "female members in derogatory terms," such as "bitch," and that Mendoza showed "favoritism . . . toward particular officers and executive board members."

Fourth, Local 1637 persistently failed to process grievances in a timely manner, and in at least once instance there was evidence that Mendoza had held up a member's grievance to retaliate against that member's vocal criticism of Mendoza.

Fifth, Local 1637 failed to obey direct orders from ATU's leadership. In particular, Mendoza was repeatedly instructed that the position of secretary-treasurer was required to be a full-time position, but he ignored these directives. Mendoza also ignored a directive informing him that delegates to the ATU International Convention must be elected; instead, he proceeded to appoint those delegates himself. After further intervention by ATU forced the Local to back down, Mendoza still required the Local to cover the nonrefundable airfare and registration fee of a delegate he had wrongly appointed.

After the ATU board upheld the trusteeship, Mendoza's employer, Keolis Transit America, Inc. ("KTA"), made clear

that it expected Mendoza to return to work immediately. (Mendoza had been on a leave of absence from his position as a coach operator while serving as president of Local 1637.)  However, in October 2016, before the trusteeship proceedings began, Mendoza was convicted of driving under the influence, which resulted in the suspension of his commercial driver's license.  In response to KTA's threat to terminate him, Mendoza asked Local 1637 to file a grievance against KTA on his behalf.  Pursuant to a subsequent settlement between KTA and Local 1637 (which Trustee Lindsay accepted on Mendoza's behalf but without his consent), Mendoza was offered an opportunity to resume work for KTA if he could recertify his license within five to seven days.  After he failed to do so, he was terminated by KTA in 2017.

**B**

In September 2017, Mendoza filed *Mendoza I* in state court against ATU, Lindsay, Hanley, Bryant, McNett, Smith, and Home (the "ATU Defendants"), as well as Local 1637 members Higgins and Richards.  In his complaint in that case, Mendoza challenged the imposition of the trusteeship and the removal of the executive board members on a variety of grounds, including breach of the ATU Constitution, fraudulent misrepresentation, and malicious prosecution.  In its prayer for relief, the complaint sought, *inter alia*, an order declaring "that the process for placing the Local Union under trusteeship was invalid" and directing "that the trusteeship over Local 1637 be terminated, and that Mr. Mendoza and the rest of Local 1637's Executive Board be restored to their positions."  ATU removed the action to federal court several days later, asserting, *inter alia*, that the breach-of-contract claims based on the ATU Constitution were "completely preempted" by § 301(a) of the Labor

Management Relations Act, 29 U.S.C. § 185(a), and therefore necessarily arose under federal law. *See Garcia v. Service Emps. Int'l Union*, 993 F.3d 757, 762 (9th Cir. 2021) (holding that § 301(a) "completely preempts state law claims based on contracts between labor unions, which may include union constitutions").

After discovery closed in *Mendoza I*, Mendoza filed *Mendoza II* in May 2018 in federal court, asserting similar claims against the same ATU Defendants.[1] This new suit, however, added seven of the former executive board members of Local 1637 as co-plaintiffs (the "Executive Board Plaintiffs"). The complaint also named several additional defendants—*viz*., KTA; Miller Kaplan & Arase ("MKA"), a firm that had audited Local 1637's finances; and several of KTA's and MTA's employees.

The ATU Defendants moved to dismiss the claims against them in *Mendoza II* on claim-splitting grounds.

---

[1] The operative complaint in *Mendoza II* added as a defendant an additional ATU vice president named Richie Murphy, and it dropped Higgins and Richards as defendants. The complaint alleges that Mendoza had previously asked Hanley in 2015 to bring certain charges against Murphy and that the actions ATU took against Mendoza in 2017 were in retaliation for his complaints about Murphy. This same contention had been raised and rejected during the trusteeship proceedings before ATU hearing officer Bryant, and it was also alluded to in the *Mendoza I* complaint even though Murphy was not named as a defendant there. Under these circumstances, the naming of Murphy as an additional ATU Defendant does not affect the application of preclusion or claim-splitting principles. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 249 (9th Cir. 1992). In any event, the *Mendoza II* complaint pleads no facts that would plausibly establish that Murphy played a role in the events in 2017 that led to the imposition of the trusteeship over Local 1637. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While that motion was still pending, and without prejudice to its disposition, the district court ordered *Mendoza I* and *Mendoza II* to be otherwise consolidated.[2]  On September 5, 2019, the district court dismissed Plaintiffs' *Mendoza II* claims against the ATU Defendants, holding that they were barred by the doctrine of claim-splitting.  After the district court entered final judgment against Plaintiffs on all claims on May 4, 2020, Plaintiffs timely appealed.

## II

Plaintiffs "generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'"  *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (citation omitted).  To determine when such improper claim-splitting is present, "we borrow from the test for claim preclusion."  *Id*.  Under the federal claim-preclusion principles that apply in these federal-question-based suits, the bar of claim-splitting is applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or their privies.  *Id*. at 689.[3]   Reviewing de novo the district court's determination that both requirements are satisfied in this

---

[2] We reject Plaintiffs' suggestion that, by first consolidating *Mendoza I* and *Mendoza II*, the district court somehow lost the ability to apply claim-splitting principles.  The district court made sufficiently clear, on the record, that its consolidation of the cases was subject to the then-pending motion to dismiss the portions of *Mendoza II* that were asserted to be impermissibly duplicative of *Mendoza I*.

[3] *Adams*'s expansive conception of the "same party" requirement was rejected by the Supreme Court in *Taylor v. Sturgell*, 553 U.S. 880, 904 (2008), but *Adams* remains good law for the particular points for which we cite it here.

case, *see*, *e.g.*, *Guild Wineries & Distilleries v. Whitehall Co.*, 853 F.2d 755, 758 (9th Cir. 1988), we affirm.

## A

Whether two suits involve the same causes of action turns, at least in federal-question cases, on the application of the Restatement of Judgments' same-transaction test. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982); *Adams*, 487 F.3d at 689. That test directs us to consider four factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Adams*, 487 F.3d at 689 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)). Each of these factors confirms that *Mendoza I* and *Mendoza II* involve the same causes of action.

The "most important" factor is "whether the two suits arise out of the same transactional nucleus of facts." *Adams*, 487 F.3d at 689 (citations and internal quotation marks omitted). That is obviously true here: the gravamen of both suits is that, based on its findings concerning Mendoza's extensive malfeasance, ATU was able to place Local 1637 into receivership and to oust its then-existing board. And given that core overlap, it is equally obvious that the two suits involve "infringement of the same right"; that litigation of the suits would involve "substantially the same evidence";

and that continued litigation of a second suit could impair any "rights or interests" that might be established in a judgment in the first. *Id.* The fact that *Mendoza II* involves somewhat different legal theories and a somewhat broader range of related conduct and damages does not alter the underlying fundamental identity of the suits under the Restatement's same-transaction test. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982) ("Res judicata has recently been taken to bar claims arising from the same transaction even if brought under different statutes.") (citing RESTATEMENT (SECOND) OF JUDGMENTS § 61(1) (Tentative Draft No. 5, Mar. 10, 1978) (additional citations omitted)).

## B

The more difficult question concerns whether the two cases involve the same parties or their privies. Ordinarily, a different set of parties—such as the additional Plaintiffs in *Mendoza II*—would be entitled to bring their own suit concerning the very same events that are the subject of an existing suit by a different plaintiff or plaintiffs. *See, e.g., South Cent. Bell Tel. Co. v. Alabama*, 526 U.S. 160, 167–68 (1999) (claim preclusion could not be applied as between two suits brought by separate corporations challenging constitutionality of state tax in different tax years). But under the Supreme Court's decision in *Taylor*, a nonparty to a first action may nonetheless be subject to claim preclusion—and therefore also to the bar against claim-splitting—when, *inter alia*, that nonparty was "adequately represented by someone with the same interests who was a party" to the first suit. *Taylor*, 553 U.S. at 894 (simplified). Under the unique facts of this case, the district court correctly held that the Executive Board Plaintiffs were adequately represented by Mendoza in *Mendoza I*.

As the Supreme Court has explained, a nonparty is adequately represented in a prior suit when, "at a minimum: (1) [t]he interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900 (citations omitted). "In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented." *Id.* All three of these requirements are satisfied here.

## 1

First, the Executive Board Plaintiffs' interests completely aligned with Mendoza's. *Mendoza I* expressly sought to have the trusteeship terminated and to have all prior board members—including both Mendoza *and* the Executive Board Plaintiffs—be reinstated to the board. Moreover, all of the relevant claims and injuries in *Mendoza II* arose from the trusteeship that was challenged in *Mendoza I*.[4] And, as our review of the ATU hearing officer's findings

---

[4] The only possible exception is Plaintiffs' defamation claim, which alleges that the ATU Defendants falsely accused them of embezzlement by circulating the campaign literature of competing candidates in a subsequent board election. But that claim also rests on the asserted falsity of the underlying allegations of wrongdoing against Mendoza, and so it provides no basis for concluding that the interests of Mendoza and the Executive Board Plaintiffs were not aligned. In any event, the defamation claim cannot salvage the claims against the ATU Defendants in *Mendoza II*, because it improperly seeks to impose liability on conduct that is mandated by federal regulations governing union elections. *See* 29 C.F.R. § 452.70 (expressly stating that "a union's contention that mailing of certain campaign literature may constitute libel for which it may be sued has been held not to justify its refusal to distribute the literature, since the union is under a statutory duty to distribute the material").

confirms, the ruling upholding the trusteeship rested dispositively, if not exclusively, on misconduct committed by Mendoza. *See supra* at 8–9. Indeed, all seven of the Executive Board Plaintiffs submitted declarations in *Mendoza I* with identical language attesting to the fact that the "trusteeship was imposed *solely* to remove Jose [Mendoza] from office" (emphasis added). Given that all of the Executive Board Plaintiffs' injuries rested on the validity of the ATU Defendants' findings concerning Mendoza's misconduct, it follows that Mendoza's interests were aligned with those of the Executive Board Plaintiffs when, in *Mendoza I*, he challenged those findings, the resulting imposition of a trusteeship, and the accompanying removal of the entire board.

Furthermore, because the trusteeship was imposed as a result of Mendoza's malfeasance, as opposed to any wholly independent conduct by other individual Plaintiffs, the Executive Board Plaintiffs' claims necessarily rise and fall with Mendoza's claims—further confirming that their interests are aligned. Indeed, on every cause of action the Executive Board Plaintiffs allege, they are joined together with Mendoza and they seek relief on identical grounds.[5]

The Executive Board Plaintiffs, even after amending their complaint to add fourteen additional causes of action, make no claims that are independent of Mendoza's, and the gravamen of their shared claims is that the trusteeship, and the concomitant removal of Plaintiffs from their positions,

---

[5] The sixth claim in *Mendoza II*—which alleged breach of the duty of fair representation—is the sole claim that is asserted only by Mendoza. Because that claim is asserted by the same party who is the plaintiff in *Mendoza I*, it is unquestionably barred by the claim-splitting doctrine. The claim is therefore irrelevant to the analysis with respect to the Executive Board Plaintiffs.

was based on allegations that were "unsupported by evidence or facts."  Thus, the Executive Board Plaintiffs' argument is that the trusteeship was wrongly imposed because Mendoza did not commit misconduct, not that they were improperly removed for alleged misconduct of their own of which they were innocent.  This is also consistent with the CGL: Section 12.6 of the ATU Constitution makes clear that, once a trusteeship is imposed, individual board members are automatically suspended, and if the trusteeship is subsequently upheld after a hearing (as occurred here), those board members are automatically removed from office.  Once ATU imposed a trusteeship over Local 1637 on account of Mendoza's extensive misconduct, the other board members were automatically stripped of their responsibilities, regardless of whether they, individually, committed any misconduct.  And under the applicable procedures governing review of the trusteeship, the Executive Board Plaintiffs could regain their positions *only if* the imposition of the trusteeship was itself invalidated.  Accordingly, the Executive Board Plaintiffs' claims concerning their ouster rise and fall with Mendoza's.  Put simply, the allegations of the operative complaint in *Mendoza II* provide no basis upon which to conclude that the Executive Board Plaintiffs' interests were *not* aligned with those of Mendoza.

**2**

It is also clear that, in *Mendoza I*, Mendoza understood himself to be acting in a representative capacity on behalf of the other board members and that the other board members had notice that he was doing so.  The second and third elements of the adequate-representation test, *see supra* at 15, are thus also satisfied here.

In *Mendoza I*, Mendoza specifically requested that, *inter alia*, the court declare that the trusteeship and the removal of Mendoza and "the rest of Local 1637's Executive Board" was unlawful—the same core remedy those board members seek in *Mendoza II*. Before the district court in *Mendoza I*, Mendoza clarified his own view of the relationship between *Mendoza I* and the claims of the Executive Board Plaintiffs in *Mendoza II* as follows (emphases added):

> Plaintiff Mendoza brought this action individually, and *on behalf of* Local 1637, of which the *Mendoza 2* Plaintiffs are members. As such, *the Mendoza 2 Plaintiffs have an interest in this case as members of Local 1637*, and this Motion will proceed by referencing the *Mendoza 1* and *Mendoza 2* Plaintiffs collectively as "Plaintiffs."

Moreover, as noted earlier, all of the Executive Board Plaintiffs themselves submitted declarations in support of Mendoza's effort to get them restored to their positions— thereby confirming, not only that they were aware of *Mendoza I*, but that they supported Mendoza's efforts in that suit on their behalf. *See supra* at 15–16. This is the rare situation in which the litigants in the two suits, despite not sharing a formal legal relationship, cannot be characterized as "'strangers' to one another." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 802 (1996) (citation omitted).

### III

Accordingly, we agree with the district court that Mendoza viewed himself as acting in a representative capacity in *Mendoza I* and that he was an adequate representative of the Executive Board Plaintiffs in that suit. The district court therefore properly dismissed the

duplicative claims against the ATU Defendants in *Mendoza II*.

**AFFIRMED.**