**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JERRY JAMGOTCHIAN; THETA HOLDING I, INC., | No. 23-55735 |
| *Plaintiffs-Appellants*, | D.C. No. 8:22-cv-01893-FWS-KES |
| v. | |
| GREGORY L. FERRARO; OSCAR GONZALES; DENNIS ALFIERI; DAMASCUS CASTELLANOS; BRENDA DAVIS; THOMAS C. HUDNUT; WENDY MITCHELL; KIMBERLY SAWYER; LUIS JAUREGUI; RICHARD WILLIAMS, | OPINION |
| *Defendants-Appellees*, | |
| and | |
| CALIFORNIA HORSE RACING BOARD, | |
| *Defendant*. | |

Appeal from the United States District Court
for the Central District of California
Fred W. Slaughter, District Judge, Presiding

Submitted January 8, 2024[*]
San Francisco, California

Filed February 26, 2024

Before: Marsha S. Berzon, Johnnie B. Rawlinson, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress

## SUMMARY[**]

### Civil Rights/Issue Preclusion

The panel reversed the district court's holding that the decision of the California Horse Racing Board (CHRB), the state agency responsible for administering all laws, rules, and regulations related to horse racing, precluded plaintiffs' 42 U.S.C. § 1983 action alleging First Amendment violations arising from the refusal to register plaintiffs' thoroughbred racehorse named Malpractice Meuser.

The panel held that the district court erred by concluding that the CHRB's decision precluded plaintiffs' § 1983

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument because we previously heard oral argument in Case No. 23-55208, a prior appeal involving this same dispute and legal issues. We have considered the briefing and argument in Case No. 23-55208 in our resolution of this appeal.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

action. For a state administrative agency decision to have the same preclusive effect as a state court judgment, the administrative proceeding must be conducted with sufficient safeguards and satisfy the requirements of fairness outlined in *United States v. Utah Construction and Mining Co.*, 384 U.S. 394 (1966). Applying those fairness requirements, the panel held that the CHRB did not and could not properly resolve plaintiffs' claims because under California law, the CHRB lacked the authority to decide constitutional claims. Accordingly, the agency decision had no preclusive effect.

The panel held that plaintiffs' decision not to seek review of the CHRB's decision in state court did not imbue that decision with preclusive effect because any requirement that plaintiffs go to state court before filing suit under § 1983 would amount to an improper exhaustion prerequisite.

**COUNSEL**

John R. Sommer, John R. Sommar Attorney at Law, Villa Park, California, for Plaintiffs-Appellants.

Kayi Okine, Deputy Attorney General; Kenneth C. Jones, Supervising Deputy Attorney General; Chris A. Knudsen, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General, Los Angeles, California; for Defendants-Appellees.

**OPINION**

BRESS, Circuit Judge:

A dispute over a horse's name has led to this appeal about preclusion. The question is whether a state agency decision precludes the plaintiffs' § 1983 lawsuit. The answer is "no." The agency decision has no preclusive effect because the agency lacked jurisdiction to decide the constitutional issues that the plaintiffs now raise. Nor were the plaintiffs required to seek review of the state agency's decision in state court before suing under § 1983. Two of our past decisions created some confusion on these settled issues in the court below. Taking this opportunity to address those decisions, we reverse the district court's dismissal of the plaintiffs' complaint and remand for further proceedings.

I

Plaintiffs Jerry Jamgotchian and Theta Holdings I (collectively, Jamgotchian) own a thoroughbred racehorse named Malpractice Meuser. California law requires that all thoroughbreds racing in California be registered with a private organization called the Jockey Club of New York. *See* Cal. Bus. & Prof. Code § 19416; Cal. Code Regs. tit. 4, § 1588(a)(1). Jamgotchian wanted to race Malpractice Meuser in California, so he applied to register the horse with the Jockey Club.

The Jockey Club refused registration. It concluded that the name Malpractice Meuser violated the *Principal Rules and Requirements of the American Studbook* Rule 6.F.11, which makes ineligible for use horse names "designed to harass, humiliate, or disparage a specific individual." The Jockey Club believed that Malpractice Meuser was named

for Michael D. Meuser, a Kentucky lawyer specializing in equine law. The Club instructed Jamgotchian to seek registration for the horse under a different name.

Jamgotchian did not do so and thus never obtained Jockey Club registration. Nevertheless, Jamgotchian sought to enter Malpractice Meuser in a race at California's Los Alamitos Race Course. The Los Alamitos Board of Stewards denied entry. Stewards "have general authority and supervision over all licensees and other persons attendant on horses" and are responsible "for the conduct of the race meeting[s] in every particular." Cal. Code Regs. tit. 4, § 1527. The Stewards informed Jamgotchian that Malpractice Meuser was ineligible to race because the horse was not registered with the Jockey Club, as California Business and Professions Code § 19416 requires.

Jamgotchian appealed the Stewards' decision to the California Horse Racing Board (CHRB), the state agency responsible for administering "all laws, rules, and regulations affecting horse racing." Cal. Bus. & Prof. Code § 19440(a)(3). Among other claims, Jamgotchian alleged that the Stewards' enforcement of the Jockey Club registration requirement in § 19416 resulted in impermissible viewpoint discrimination, contrary to the First Amendment. *Cf. Matal v. Tam*, 582 U.S. 218, 243–44 (2017) (holding that the Lanham Act's prohibition on disparaging trademarks violates the First Amendment).

Adopting a hearing officer's written ruling, the CHRB affirmed the Stewards' determination that Malpractice Meuser could not race absent Jockey Club registration. The CHRB also offered commentary on why it believed that Jamgotchian's constitutional claims were not colorable. But, importantly, the CHRB found that it lacked jurisdiction

to decide Jamgotchian's constitutional claims.  It explained that, because the California Constitution bars state agencies from declaring a statute unconstitutional or refusing to enforce a statute on constitutional grounds unless an appellate court has made that determination, Jamgotchian was required to go to court for resolution of his constitutional claims. *See* Cal. Const. Art. III. § 3.5.  The CHRB concluded that although it regarded Jamgotchian's constitutional claims as "unfounded," they were "beyond the purview of the CHRB in any event."

The CHRB decision advised Jamgotchian that a California superior court would have authority to address his constitutional claims.  But Jamgotchian did not seek review of the CHRB's decision in state court.  *See* Cal. Code. Civ. Proc. § 1094.5 (procedures for writs of mandamus).  Under California law, a § 1094.5 writ petition is the "ordinary means" for challenging a state agency decision in state court. *Chen Through Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708, 724 n.6 (9th Cir. 2022).  Instead of filing a § 1094.5 petition, Jamgotchian brought this lawsuit in federal court under 42 U.S.C. § 1983 against individual Stewards and CHRB members.  In his complaint, Jamgotchian advanced the constitutional claims he had presented to the CHRB and sought a preliminary injunction permitting Malpractice Meuser to race in California.

Although the defendants had not raised the issue, the district court requested briefing on whether the CHRB proceedings were preclusive of Jamgotchian's constitutional claims.  The district court subsequently concluded that because the CHRB had already considered Jamgotchian's constitutional claims and Jamgotchian had not challenged the CHRB's decision in state court, the CHRB decision precluded Jamgotchian's § 1983 lawsuit.  The district court

thus found that Jamgotchian was unlikely to succeed on the merits and denied his request for a preliminary injunction.

Jamgotchian appealed. While his appeal was pending, the district court dismissed Jamgotchian's complaint with prejudice under Rule 12(b)(6), based on the same preclusion rationale by which it had denied Jamgotchian's request for a preliminary injunction. Jamgotchian then separately appealed that judgment of dismissal.

Because the denial of Jamgotchian's request for a preliminary injunction merged into the final judgment, we dismissed Jamgotchian's first appeal as moot. *See, e.g.*, *Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 959 (9th Cir. 2021). Before us now is Jamgotchian's second appeal, of the judgment of dismissal. We review the district court's dismissal of a complaint under Rule 12(b)(6) de novo. *Pardini v. Unilever U.S., Inc.*, 65 F.4th 1081, 1084 (9th Cir. 2023).

## II

The district court erred in concluding that the CHRB decision, in combination with Jamgotchian not seeking review of that decision in state court, precludes this § 1983 lawsuit.

## A

The CHRB's decision does not preclude Jamgotchian's constitutional claims. Under 28 U.S.C. § 1738, federal courts "give the same preclusive effect to state court judgments as they would be given in the state in which they are rendered." *Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994). This statutory provision does not apply to state administrative agency decisions. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796–97, 799 (1986). Nevertheless, the

Supreme Court has held that, as a matter of federal common law, federal courts must sometimes accord preclusive effect to state agency decisions. *See id.* at 797–98; *see also Astoria Fed. Savings & Loan Assoc. v. Solimino*, 501 U.S. 104, 107–08, 110 (1991); *Miller*, 39 F.3d at 1032; *Guild Wineries & Distilleries v. Whitehall Co.*, 853 F.2d 755, 758 (9th Cir. 1988). Although Congress may direct otherwise (and has done so for some statutes), Congress "presumptively intends" state agency determinations to have preclusive effect in federal court. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 151 (2015) (citing *Elliott*, 478 U.S. at 796–99). This presumption applies to § 1983 suits. *See Elliott*, 478 U.S. at 799. Still, whether an agency decision has preclusive effect in a given § 1983 case requires a detailed inquiry.

To decide whether federal common law entitles a state agency decision to preclusive effect, we proceed in two steps. Our "threshold" task is "to determine whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment." *Plaine v. McCabe*, 797 F.2d 713, 719 (9th Cir. 1986). For an administrative proceeding to "rise to [this] level," *id.*, it must "satisf[y] the requirements of fairness outlined in" the Supreme Court's decision in *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422 (1966). *Miller*, 39 F.3d at 1032–33 (brackets omitted) (quoting *Guild Wineries*, 853 F.2d at 758). The so-called *Utah Construction* "fairness requirements" are: "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." *Id.* at 1033 (citing *Utah Construction*, 384 U.S. at 422). The second prong of *Utah Construction*—about the capacity of

the agency to resolve disputed facts—"encompass[es] disputed issues of law as well." *Guild Wineries*, 853 F.2d at 759 & n. 7 (citing *Eilrich v. Remas*, 839 F.2d 630, 633–34 & n.2 (9th Cir. 1988)); *see also Miller*, 39 F.3d at 1032.

If a state agency proceeding satisfies the *Utah Construction* factors, we then turn to state law to "determine if, under [state law], the [agency's] decision would be given preclusive effect." *Guild Wineries*, 853 F.2d at 761. At this step, "we will defer to the considered judgment of the courts of [the state] that an unreviewed agency determination . . . is equivalent to a state court judgment entitled to res judicata and collateral estoppel effect." *Miller*, 39 F.3d at 1038. If an agency proceeding does not meet the "minimum criteria of *Utah Construction*," however, we deny preclusive effect, state law notwithstanding. *Id.*; *see also id.* at 1033 (explaining that "although a federal court should ordinarily give preclusive effect when the state court would do so, 'there may be occasions where a state court would give preclusive effect to an administrative decision that failed to meet the minimum criteria set down in *Utah Construction*'") (quoting *Plaine*, 797 F.2d at 719 & n.13); *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999) ("We have denied preclusive effect to administrative agency determinations where the plaintiff was denied an adequate opportunity to litigate issues regardless of whether the state court would have done so.") (citing *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1283–84 (9th Cir. 1986)).

In this case, the district court's preclusion determination runs aground on *Utah Construction*'s second prong: the requirement that the agency resolve disputed issues of fact and law "properly before it." *Guild Wineries*, 853 F.2d at 759 & n.7. "An issue is 'properly before an administrative tribunal if that body has jurisdiction to decide it,' [as] a

matter of state law." *Misischia v. Pirie*, 60 F.3d 626, 630 (9th Cir. 1995) (quoting *Guild Wineries*, 853 F.2d at 759). Thus, "[w]e deny preclusive effect, in general, when the adjudicator lacks jurisdiction to determine an issue." *Miller*, 39 F.3d at 1038.

Here, the CHRB expressly recognized that it lacked the authority to decide Jamgotchian's constitutional claims, because California law provides that state agencies like the CHRB have "no power" to refuse to enforce a statute on constitutional grounds, or to declare a statute unconstitutional unless a court has already done so. Cal. Const. Art. III, § 3.5(a). Accordingly, the CHRB acknowledged that it was "prohibited" from refusing to enforce the state law Jockey Club registration requirement based on the constitutional arguments that Jamgotchian raised. The CHRB thus did not, and could not, "properly" resolve those disputed issues, as prong two of *Utah Construction* requires. 384 U.S. at 422; *see also, e.g.*, *Guild Wineries*, 853 F.2d at 759.

It is irrelevant for preclusion purposes that the CHRB also offered its extra-jurisdictional thoughts on the constitutional questions. The inquiry under *Utah Construction* prong two is not whether the state agency pontificated on the issues, but whether it "ha[d] jurisdiction to decide" them. *Misischia*, 60 F.3d at 630 (quoting *Guild Wineries*, 853 F.2d at 759). Here, it did not—by its own reckoning, as well as on our independent understanding of California law. *See* Cal. Const. Art. III. § 3.5.

Our precedent is clear: because the CHRB "lack[ed] jurisdiction to determine" Jamgotchian's constitutional claims, "[w]e deny preclusive effect." *Miller*, 39 F.3d at 1038 (citing *Shaw v. Calif. Dept. of Alcoholic Beverage*

*Control*, 788 F.2d 600, 608 (9th Cir. 1986)).   And because the federal *Utah Construction* factors are not all satisfied, it is beside the point whether California law would accord preclusive effect to the CHRB decision in the circumstances presented.   *See Olson*, 188 F.3d at 1086; *Miller*, 39 F.3d at 1033; *Plaine*, 797 F.2d at 719 & n.13.[1]

B

Jamgotchian's decision not to seek review of the CHRB's ruling in state court did not imbue the CHRB decision—or, in reality, its lack of decision—with preclusive effect.

The district court's contrary conclusion effectively imposed on Jamgotchian the requirement that he exhaust state court remedies to avoid the CHRB decision precluding this lawsuit.   That requirement is contrary to the "settled rule" that "'exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983.'"   *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)); *see also id.* at 2172–73 (explaining that "[t]he general rule is that plaintiffs may bring constitutional claims under § 1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available")

---

[1] Our cases have stated that "[b]ecause California has adopted the *Utah Construction* standard, we give preclusive effect to a state administrative decision if the California courts would do so."   *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1155 (9th Cir. 2018) (citing *Miller*, 39 F.3d at 1032–33); *see also Plaine*, 797 F.2d at 719 n.13.   As we have noted, if we determine that the *Utah Construction* factors are not met, the agency decision lacks preclusive effect.   In this case, however, we believe California courts would likewise conclude that the *Utah Construction* factors are not met, as we discuss below.

(quotations omitted); *Pakdel v. City & Cnty. of S.F., Cal.*, 141 S. Ct. 2226, 2230 (2021) (per curiam); *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 501 (1982). If a litigant pursues and obtains state court or state agency resolution of a matter, those decisions can be preclusive in a later § 1983 lawsuit in federal court. *See, e.g.*, *Elliot*, 478 U.S. at 796–97. But by treating the CHRB decision as preclusive of issues it could not decide because Jamgotchian did not seek mandamus review in state court, the district court imposed an exhaustion-type requirement of the sort that contravenes Supreme Court precedent on § 1983.

Such an exhaustion requirement springs an improper "preclusion trap" for § 1983 plaintiffs. *Knick*, the Supreme Court's recent foray into this area, illustrates the issue. In *Knick*, the Court overturned its earlier rule from *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), that a property owner could not bring a federal Takings Clause claim under § 1983 until a state court had denied his claim for just compensation under state law. *Id.* at 2167–68. The problem with that rule, *Knick* explained, was that in "effectively establish[ing] an exhaustion requirement" for § 1983 takings claims, *Williamson County* created an untenable "Catch-22." *Id.* at 2167, 2173. The upshot was that a takings plaintiff could not "go to federal court without going to state court first," but if he went to state court and lost, his claims would be "barred in federal court" by preclusion doctrines. *Id.* at 2167. Hence, the "preclusion trap." *Id.* This result was not permissible because it caused the "guarantee of a federal forum" for federal claims cognizable under § 1983 to "ring[] hollow." *Id.* And although *Williamson County* located its decision in an interpretation of the Takings Clause, had it

phrased its holding in terms of the exhaustion of state remedies, "its error would have been clear." *Id.* at 2173.

If we accepted the district court's view that Jamgotchian was required to pursue state court mandamus review of the CHRB's decision to prevent that decision from precluding his § 1983 claims, Jamgotchian would face a preclusion trap akin to the one *Knick* rejected. *Id.* The result would be that Jamgotchian—with his constitutional claims yet undecided by any jurisdictionally competent body—could not assert those claims in federal court without going to state court first. Yet, if the state court rejected Jamgotchian's claims, he would then be precluded from bringing them in federal court. *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 761–62 (9th Cir. 2014). Jamgotchian's ability to have his constitutional claims heard in federal court would be conditioned on, but simultaneously threatened by, his resort to state court. That heads-I-win-tails-you-lose result is inconsistent with *Knick* and the precedent on which it is founded.

Our cases have noted that "[i]n California, 'exhaustion of judicial remedies is necessary to avoid giving binding effect to an administrative agency's decision.'" *Doe*, 891 F.3d at 1155 (quoting *Johnson v. City of Loma Linda*, 5 P.3d 874, 879 (Cal. 2000)) (internal alterations omitted). But California courts decline to afford preclusive effect to agency decisions over which the agency lacked jurisdiction. In *City & County of San Francisco v. Padilla*, 23 Cal. App. 3d 388, 400 (1972), for example, the California Court of Appeals concluded that a decision by a Board of Permit Appeals did not have preclusive effect in a state court nuisance action because the Board lacked subject matter jurisdiction over the decision. And in applying the *Utah Construction* factors to a decision by the Department of

Social Services, the California Supreme Court recited the requirement that the Department must have "had jurisdiction to decide th[e] issue" under its governing statute for its decision to be given preclusive effect. *People v. Sims*, 32 Cal.3d 468, 481 (1982); *see also Murray v. Alaska Airlines, Inc.*, 237 P.3d 565, 571 (Cal. 2010) (reaffirming the *Utah Construction* analysis conducted in *Sims*). Under California law, "[t]he doctrine of exhaustion of judicial remedies applies where . . . the prior administrative proceedings possessed the requisite judicial character such that they yielded decisions or findings *that could later be given preclusive effect*." *Alborzi v. Univ. of S. Cal.*, 269 Cal. Rptr. 3d 295, 310 (Cal. Ct. App. 2020) (emphasis added and internal quotation marks omitted). Because judicial exhaustion is a requirement for avoiding the preclusive effect of agency decisions, it logically is inapplicable where the agency decision would not be given preclusive effect in the first place.

Of course, even assuming that the exhaustion requirement would apply under California law, we "defer to the considered judgment of the courts of California" only "[s]o long as the minimum criteria of *Utah Construction* are met." *Miller*, 39 F.3d at 1038. As we have explained, those "minimum criteria" are not met here.

The State argues on appeal that the district court's ruling sets no preclusion trap because Jamgotchian chose to appeal the Stewards' decision to the CHRB, as opposed to going directly to federal court first. On this view, Jamgotchian's election to seek relief before the CHRB subjected him to the remaining requirements of California's legal system, including the alleged requirement that Jamgotchian pursue his remedies in state court through a § 1094.5 writ petition

to avoid preclusion by a decision of an agency that lacked jurisdiction to decide the relevant issues.

The State is mistaken. By seeking relief before the CHRB, Jamgotchian did expose himself to the risk that the CHRB's decision would preclude a later § 1983 lawsuit—had the CHRB ruled on his claims in a proper exercise of its jurisdiction. *See Elliot*, 478 U.S. at 796–97. If Jamgotchian had chosen to seek relief in state court, he would have created the same risk. But when the outcome of the CHRB process was that the CHRB lacked jurisdiction to decide the relevant issues—meaning that Jamgotchian was no farther along than when he started—*requiring* Jamgotchian to pursue his claims in state court would indeed ensnare him in a preclusion trap. He would be forced to exhaust a state court process the result of which could then preclude him from bringing a § 1983 lawsuit.

That type of exhaustion requirement is improper under § 1983. The second *Utah Construction* factor requires that the issues be properly before the agency, and, as we have explained, "[a]n issue is properly before an administrative tribunal if that body has jurisdiction to decide it." *Misichia*, 60 F.3d at 630 (quoting *Guild Wineries*, 759 F.2d at 759). *Utah Construction* does not itself impose any exhaustion requirements, nor does the second *Utah Construction* factor—framed in terms of the *agency's* authority—include consideration of what a state court could later decide were the matter presented to it. When the CHRB lacked jurisdiction, as here, its decision lacked preclusive effect under *Utah Construction*. Any requirement that Jamgotchian go to state court before filing suit under § 1983 would amount to an improper exhaustion prerequisite.

C

The district court reached its contrary result on these questions by relying principally on our past decisions in *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994), and *Doe v. Regents of the University of California*, 891 F.3d 1147 (9th Cir. 2018). Neither case supports treating Jamgotchian's § 1983 lawsuit as precluded.

*Miller* concerned a plaintiff, Miller, who was dismissed from his position in the Santa Cruz County Sheriff's Department and then contested his dismissal before the County's Civil Service Commission. 39 F.3d at 1032. After an evidentiary hearing, the Commission ruled against Miller and notified him of his right to seek judicial review of its decision in California state court under California Code of Civil Procedure § 1094.5. *Id.* Miller instead brought a § 1983 suit against the County in federal court. *Id.* The district court found that Miller's § 1983 claims were precluded by the Commission's ruling and granted summary judgment for the County. *Id.*

We affirmed because the Commission's proceeding satisfied both *Utah Construction* and California preclusion law. *Id.* at 1032–38. Unlike in this case, there was no suggestion that the Commission lacked jurisdiction to decide Miller's claims. Indeed, in listing reasons why an agency proceeding might fail to pass muster under *Utah Construction*, *Miller* specifically recognized that "[w]e deny preclusive effect . . . when the adjudicator lacks jurisdiction." 39 F.3d at 1038. Here, as we have explained, the CHRB lacked jurisdiction in all relevant respects.

Nor does *Miller* require § 1983 plaintiffs to exhaust state remedies before suing in federal court. At points in our analysis in *Miller*, we referenced Miller's ability to seek

judicial review in state court of the Commission's decision. *Id.* at 1033, 1038. For example, we stated that "[w]here, as here, the agency adjudication meets the requirements of due process, and de novo judicial review is available, concerns of comity and finality counsel against denying preclusive effect." *Id.* at 1038 (citation omitted). But we did not thereby impose an exhaustion requirement that would be contrary to Supreme Court precedent.

Instead, *Miller* generally reiterated a far more modest proposition from our past cases: that a state agency decision can have preclusive effect in future federal lawsuits even though the plaintiff did not seek review of the agency decision in state court. *See id.* at 1033. That this principle was determinative is made apparent by *Miller*'s reliance on our earlier decisions in *Plaine v. McCabe*, 797 F.2d 713 (9th Cir. 1986) and *Eilrich v. Remas*, 839 F.2d 630, 633–34 & n.2 (9th Cir. 1988). *See Miller*, 39 F.3d at 1033 (discussing these two cases). In *Plaine*, we noted that the plaintiff's decision not to seek state court review of a state agency decision "d[id] not diminish [the agency decision's] preclusive effect in federal court." 797 F.2d at 719 n.12. In *Eilrich*, we similarly rejected the argument that an "administrative decision was not preclusive because it was not reviewed by the California courts," when the plaintiff failed to seek state court review of the agency decision. 839 F.2d at 632. *Plaine* and *Eilrich* merely confirm that for a state agency decision to have preclusive effect in federal court, it is not a prerequisite that plaintiffs have sought state court review of the agency decision. In other words, when such judicial review is available, plaintiffs cannot "obstruct the preclusive use of the state administrative decision simply by foregoing the right to appeal." *Miller*, 39 F.3d at 1033 (quoting *Eilrich*, 839 F.2d at 632).

This reasoning does not impose an exhaustion requirement for § 1983 plaintiffs. "No exhaustion requirement ha[d] been imposed on Miller," we explained; instead, any preclusive effect of the state agency decision resulted from Miller's "election to pursue his claim initially in an administrative forum, and to forego his right to seek judicial review in state court," and preclusion could apply only to "all that was, or could have been, determined" by the agency. *Id.* at 1034 n.3. This explanation did not mean that Miller was *required* to exhaust state judicial remedies as to issues the agency could not and did not decide before suing under § 1983 (which would set a preclusion trap). *Id.*

It follows that when we stated in *Miller* that "the availability of judicial review, even if not always determinative, is of critical importance here," *id.* at 1038, we likewise did not impose an exhaustion requirement for § 1983 plaintiffs. That interpretation of *Miller* would of course be at war with *Miller* itself, which specifically disclaimed that it was imposing any exhaustion rule, and, in the language quoted above, recognized that "the availability of judicial review[] . . . [is] not always determinative." *See id.* at 1034 n.3. Instead, *Miller* invoked the state review process as part of underscoring why it was fundamentally fair to treat the *agency's decision* as preclusive. Indeed, we would later hold that the availability of judicial review is a requirement for a state agency decision to have preclusive effect under *Utah Construction*. *See Wehrli v. County of Orange*, 175 F.3d 692, 694–95 (9th Cir. 1999). Again, per *Miller*, the preclusive effect of a state agency decision can extend only to "all that was, or could have been, determined there." 39 F.3d at 1034 n.3. Here, because the CHRB lacked jurisdiction to vindicate Jamgotchian's constitutional challenge to the governing statute, nothing "was, or could

have been, determined" regarding those arguments before the CHRB that would preclude this § 1983 lawsuit.

Our prior decision in *Doe* also does not authorize the district court's preclusion determination. In *Doe*, an adjudicatory committee at the University of California Santa Barbara (UCSB) found that Doe, a student, had sexually assaulted another student during a trip to Lake Tahoe. The committee decided that, as punishment, Doe should be suspended from school. 891 F.3d at 1150. Like Miller, Doe could have sought mandamus review of the committee's decision in California state court under § 1094.5. *Id.* at 1151. But he declined to do so. *Id.* Instead, Doe filed a § 1983 suit in federal court, alleging procedural due process violations in the UCSB committee's handling of his hearing. *Id.*

We concluded that Doe's § 1983 claim was "precluded because he has failed to exhaust judicial remedies by filing a § 1094.5 writ petition in state court." *Id.* at 1154. We began by explaining that, as a matter of federal common law, we give preclusive effect to state agency proceedings that meet the *Utah Construction* "fairness requirements." *Id.* And we noted that "[w]e evaluate the fairness of a state administrative proceeding by resort to both the underlying administrative proceeding and the available judicial review procedure," with a § 1094.5 writ petition "provid[ing] 'an adequate opportunity for de novo judicial review.'" *Id.* (quoting *Miller*, 39 F.3d at 1033). We then concluded in relevant part as follows:

> Because California has adopted the *Utah Construction* standard, we give preclusive effect to a state administrative decision if the California courts would do so. In California,

> exhaustion of judicial remedies . . . is
> necessary to avoid giving binding effect to an
> administrative agency's decision. A party
> must exhaust judicial remedies by filing a
> § 1094.5 petition, the exclusive and
> established process for judicial review of an
> agency decision. UCSB's suspension of Doe
> is the sort of adjudicatory, quasi-judicial
> decision that is subject to the judicial
> exhaustion requirement.
>
> It is undisputed that Doe has not filed a
> § 1094.5 petition in state court. . . . .
> Therefore, Doe has not exhausted his judicial
> remedies.

*Id.* at 1155 (quotations, citations, and brackets omitted). On this basis, we held that the district court should have dismissed Doe's § 1983 claims without prejudice. *Id.*

In seemingly imposing a judicial exhaustion requirement on a § 1983 plaintiff, *Doe* appears inconsistent with *Knick* and other authorities. *Doe* never addressed settled precedent holding that exhaustion of state judicial remedies is not a prerequisite to filing suit under § 1983. And whereas *Miller* and other precedents invoked the availability of state judicial review in explaining why it was fundamentally fair to accord preclusive effect to state agency decisions under *Utah Construction*, *Doe* appears to go a step further, faulting a § 1983 plaintiff for his failure to exhaust state court review processes. Jamgotchian fairly argues that *Doe*'s reasoning is in substantial tension with *Knick* and other cases rejecting exhaustion requirements for § 1983 suits.

But we need not reach the issue of *Doe*'s continued vitality after *Knick* or decide whether we would be permitted to reach that issue as a three-judge panel. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (holding that a three-judge panel does not follow circuit precedent when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority"). Those are important questions. But because we can resolve this appeal without confronting them, they are matters for another day.

*Doe* does not govern this case for the basic reason that, again, the agency here lacked jurisdiction to decide the claims that Jamgotchian now seeks to raise in his § 1983 suit. *Doe* did not, and could not, overrule our longstanding precedent that an agency decision does not have preclusive effect under *Utah Construction* when the agency lacked jurisdiction over the federal issue sought to be raised under § 1983. *See Misischia*, 60 F.3d at 630; *Miller*, 39 F.3d at 1033; *Guild Wineries*, 853 F.2d at 759. In noting that "[w]e evaluate the fairness of a state administrative proceeding by resort to both the underlying administrative proceeding and the available judicial review procedure," *Doe*, 891 F.3d at 1154, *Doe* did not suggest that this point extends to issues over which an agency lacks jurisdiction, which would collapse *Utah Construction*'s second and third prongs and render the second prong a nullity. Indeed, we have never suggested that state court review processes could always be a curative for any *Utah Construction* deficiencies that might exist at the agency level. As our discussion above of *Miller* emphasized, we have for the most part invoked the availability of state court review processes when explaining why it is ultimately fair to accord preclusive effect to the state agency decision itself.

In addition, and more generally, although *Doe* relied on California preclusion law based on California's own adoption of *Utah Construction*, *see* 891 F.3d at 1155, *Doe* did not, and again could not, reject our case law recognizing that preclusion does not apply when the *Utah Construction* factors are not all met.  *See Olson*, 188 F.3d at 1086; *Miller*, 39 F.3d at 1033; *Plaine*, 797 F.2d at 719 & n.13.  And as to California preclusion law, *Doe* did not address whether California would require a plaintiff to seek state court review to avoid the supposed preclusive effect of an agency decision that lacked jurisdiction over the relevant issues.  As we have noted, it does not appear that California courts would impose such a requirement.

True, when discussing the factual background of the case, *Doe* did mention that in the district court, Doe had alleged "that UCSB lacked jurisdiction over the Lake Tahoe trip."  891 F.3d at 1151.  This was apparently a reference to the possibility that UCSB could not punish Doe for off-campus conduct.  But *Doe* did not rely on this allegation in its merits discussion, and it is not apparent that *Doe*, which focused on exhaustion, evaluated the *Utah Construction* factors in any meaningful way.  It certainly did not do so as to *Utah Construction* prong two.  *Doe*, which did not address the preclusion implications of a lack of jurisdiction at the administrative level, thus cannot be considered authoritative on that point.  *See, e.g.*, *United States v. Corrales-Vazquez*, 931 F.3d 944, 954 (9th Cir. 2019) ("Cases are not precedential for propositions not considered, or for questions which merely lurk in the record.") (citations, alterations, and quotations omitted).  In any event, in *Doe* the argument appears to have been that UCSB in issuing its suspension decision exceeded its authority.  In this case, the CHRB

clearly lacked jurisdiction and so recognized, *disclaiming* its ability to decide the relevant issues.

We have never held that an agency's jurisdiction-wanting non-decision has preclusive effect in a later § 1983 suit. Nor have we held that the failure to pursue state court review of such a non-decision precludes a corresponding § 1983 claim in federal court. Those propositions are inconsistent with settled precedent.

*          *          *

For the foregoing reasons, the CHRB's decision does not preclude Jamgotchian's § 1983 claims. The judgment of the district court is reversed, and the case is remanded for further proceedings. Given our decision on preclusion, we do not reach Jamgotchian's argument that he had no available § 1094.5 writ remedy in state court. Nor do we reach the defendants' alternative arguments for affirmance, which the district court has yet to consider.

**REVERSED AND REMANDED.**