IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————

DEREK D. FRASER,
*Plaintiff/Appellant,*

*v.*

STATE OF ARIZONA, A GOVERNMENTAL ENTITY; DIRECTOR JEFFREY GLOVER,
AN INDIVIDUAL IN HIS OFFICIAL CAPACITY; DANIEL LUGO, AN INDIVIDUAL
ACTING UNDER THE COLOR OF LAW; BRIAN GREEN, AN INDIVIDUAL ACTING
UNDER THE COLOR OF LAW; VERN HAVENS, AN INDIVIDUAL ACTING UNDER THE
COLOR OF LAW; KENNETH HUNTER, AN INDIVIDUAL ACTING UNDER THE COLOR
OF LAW; JACK JOHNSON, AN INDIVIDUAL ACTING UNDER THE COLOR OF LAW;
AND HESTON SILBERT, AN INDIVIDUAL IN HIS OFFICIAL CAPACITY AND AN
INDIVIDUAL ACTING UNDER THE COLOR OF LAW,
*Defendants/Appellees.*

No. 2 CA-CV 2025-0116
Filed November 21, 2025

———————————

Appeal from the Superior Court in Maricopa County
No. CV2024016314
The Honorable Melissa Julian, Judge

**AFFIRMED IN PART; REVERSED IN PART**

———————————

COUNSEL

Law Offices of Kimberly A. Eckert, Tempe
By Kimberly A. Eckert
*Counsel for Plaintiff/Appellant*

Kristin K. Mayes, Arizona Attorney General
By Ann Hobart and Angela Schultz, Assistant Attorneys General, Phoenix
*Counsel for Defendants/Appellees*

---

**OPINION**

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Eppich and Judge O'Neil concurred.

---

S K L A R, Judge:

¶1        This case requires us to address the scope of a party's obligation to appeal adverse administrative decisions to the superior court. The issue arises out of the Department of Public Safety's termination of Derek Fraser's employment as a detective, which was upheld by the Law Enforcement Merit Systems Council.  Fraser did not appeal the LEMSC order to the superior court, but instead filed a collateral action that alleged wrongful termination and a claim under 42 U.S.C. § 1983.  The court dismissed those claims because Fraser had not appealed the LEMSC order.

¶2        We conclude that the superior court erred in doing so.  The failure to appeal an administrative decision precludes a collateral action only where the collateral action raises claims that the administrative body had authority to decide.  Here, the LEMSC's authority was limited to determining whether Fraser's termination was supported by "just cause" as defined by the Peace Officers Bill of Rights.  Fraser's wrongful-termination and Section 1983 claims concern different issues.  We therefore reverse the dismissal of those claims.

¶3        We also conclude, however, that the superior court correctly dismissed two other claims raised by Fraser, namely those for defamation and intentional infliction of emotional distress.  Fraser's complaint does not allege sufficient facts to support those claims.  We thus affirm their dismissal.

**BACKGROUND**

¶4        In reviewing a ruling granting a motion to dismiss, we assume the truth of the complaint's well-pled factual allegations. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, ¶ 7 (2008).  Fraser was a DPS detective who was terminated in October 2022 after two incidents involving his K-9. As authorized by statute, Fraser appealed to the LEMSC.  *See* A.R.S. § 41-1830.16(B).  In June 2023, the LEMSC affirmed his termination, finding that it was supported by "just cause" under A.R.S. §§ 41-1830.12(D)(1) and 41-1830.16(C)(1).

¶5          Instead of appealing the LEMSC order, Fraser filed a separate action in superior court. He alleged that his termination was retaliatory and that policy and procedure violations had occurred during the disciplinary process, in violation of his due-process rights and the Peace Officers Bill of Rights, A.R.S. §§ 38-1101 to 38-1120. He also alleged that he had been defamed by the state's false reporting of the matter to the Maricopa County Attorney's Office and the Arizona Peace Officer Standards and Training Board, and that the state's allegedly extreme and outrageous conduct had caused him anxiety, sleep issues, and stress.

¶6          The state moved to dismiss Fraser's complaint, and the superior court granted the motion. This appeal followed.

**FAILURE TO SEEK JUDICIAL REVIEW OF LEMSC ORDER**

¶7          In its ruling on the state's motion to dismiss, the superior court dismissed Fraser's wrongful-termination and Section 1983 claims on the ground that he did not "seek timely judicial review of the Council's order," barring further litigation of the issues. We typically review the grant of a motion to dismiss for an abuse of discretion, but we review issues of statutory interpretation de novo. *T.P. Racing, L.L.L.P v. Ariz. Dep't of Racing*, 223 Ariz. 257, ¶ 8 (App. 2009).

**I.     Issue preclusion generally requires parties to seek judicial review of administrative decisions**

¶8          Generally, when a party fails to appeal a final administrative decision, the decision is final and preclusive. *Guertin v. Pinal County*, 178 Ariz. 610, 612 (App. 1994). Arizona's Administrative Review Act reflects this requirement, providing: "Unless review is sought of an administrative decision . . . the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of the decision." A.R.S. § 12-902(B). When a party fails to seek judicial review, the opposing party may assert issue preclusion as an affirmative defense in a collateral proceeding. *See Legacy Found. Action Fund v. Citizens Clean Elections Comm'n*, 254 Ariz. 485, ¶ 24 (2023).

¶9          By contrast, when the substance of a claim is outside the administrative agency's scope of review, a collateral action is permitted. *Guertin*, 178 Ariz. at 612; *see Fleming v. Pima County*, 141 Ariz. 149, 151 (1984) (plaintiff permitted to file bad faith discharge claim that raised question "outside the province" of county merit commission's review). This rule follows from the fact that administrative agencies have "no common law or

inherent powers." *Kendall v. Malcolm*, 98 Ariz. 329, 334 (1965). Consequently, an agency "can only apply those doctrines . . . it is authorized to resolve." *McMichael-Gombar v. Phx. Civ. Serv. Bd.*, 256 Ariz. 343, ¶ 22 (2023).

¶10 The limitation on collateral actions is premised on collateral estoppel, also known as issue preclusion. *See Howell v. Hodap*, 221 Ariz. 543, n.7 (App. 2009) (issue preclusion synonymous with collateral estoppel). To establish issue preclusion, a party must satisfy four elements: (1) the issue was the same in both proceedings; (2) the issue was "actually litigated and determined in a valid and final judgment"; (3) the opposing party had a "full and fair opportunity to litigate the issue"; and (4) the issue was "essential to the judgment." *Legacy Found. Action Fund*, 254 Ariz. 485, ¶ 24. The "full and fair opportunity to litigate the issue" element cannot be satisfied if the administrative agency lacks authority to consider an issue. *See Falcone Bros. & Assocs., Inc. v. City of Tucson*, 240 Ariz. 482, ¶ 34 (App. 2016).

## II. Scope of the LEMSC's authority

¶11 Here, the administrative agency at issue is the LEMSC. Thus, the LEMSC's scope of authority determines whether Fraser may bring his wrongful-termination and Section 1983 claims in this collateral action. That authority derives from Section 41-1830.16(C), which empowers the LEMSC to "determine whether the employing agency has proven by a preponderance of the evidence that the employing agency had just cause to discipline the employee."

¶12 Under the version of Section 41-1830.16(C) applicable to Fraser's case, if the LEMSC finds that there is "just cause" for discipline, its only authority is to uphold the disciplinary action of the employing agency. *Baeuerlen v. Ariz. State Parks & Trails Dep't*, 253 Ariz. 1, ¶ 13 (App. 2022). The statute has since been amended to allow the LEMSC to recommend modifying disciplinary action if "other facts or circumstances offered" demonstrate that modification is appropriate. *See* 2024 Ariz. Sess. Laws, ch. 69, § 1. But we apply the version in effect when the LEMSC resolved Fraser's appeal. 2015 Ariz. Sess. Laws, ch. 213, § 3.

¶13 The relevant definition of "just cause" comes from the Peace Officers Bill of Rights. § 41-1830.16(H)(5). Under POBOR, "just cause" requires all of the following:

(a) The employer informed the law enforcement officer of the possible disciplinary action resulting from the officer's conduct through agency manuals, employee handbooks, the employer's rules and regulations or other communications to the officer or the conduct was such that the officer should have reasonably known disciplinary action could occur.

(b) The disciplinary action is reasonably related to the standards of conduct for a professional law enforcement officer, the mission of the agency, the orderly, efficient or safe operation of the agency or the officer's fitness for duty.

(c) The discipline is supported by a preponderance of evidence that the conduct occurred.

(d) The discipline is not excessive and is reasonably related to the seriousness of the offense and the officer's service record.

§ 38-1101(7). It follows that, to the extent Fraser's collateral action raises issues outside this definition, it is not precluded by his decision not to appeal the LEMSC's order. *See Fleming*, 125 Ariz. at 524.

### III. Whether Fraser's wrongful-termination and Section 1983 claims were outside the LEMSC's scope of authority, and thus properly raised in this collateral case

¶14 In reviewing Fraser's allegations, we assume the truth of all the complaint's well-pled facts and resolve reasonable inferences in Fraser's favor. *See Coleman v. City of Mesa*, 230 Ariz. 352, ¶ 9 (2012). However, because issue preclusion is an affirmative defense, we may affirm the dismissal only if the facts establishing that defense appear in the complaint. *Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, ¶ 16 (2021).

### A. The superior court erred in dismissing Fraser's wrongful-termination claim

¶15        Fraser argues that the superior court erred in dismissing his wrongful-termination claim because the LEMSC may not determine whether the proceedings violated his statutory rights. Fraser's wrongful-termination claim arises from three sets of factual allegations: (1) the state retaliated against him; (2) the termination process violated unspecified policies and procedures; and (3) the termination violated his rights under the POBOR.

#### 1. From the available record, the LEMSC did not address Fraser's retaliation claim and lacked authority to do so

¶16        With respect to retaliation, the Employment Protection Act authorizes a wrongful-termination claim if the employee has been terminated in retaliation for "[t]he disclosure . . . that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state . . . ." A.R.S. § 23-1501(A)(3)(c)(ii). Fraser appears to allege that he was terminated to "cover up the obvious deficiencies" in DPS's K-9 unit, poor training, and to "quash a program that was unwanted" in the department.

¶17        The state argues that the LEMSC "factually rejected" this claim, and that its findings support that Fraser was fired for his own misconduct, not for reporting another employee's illegal activity. The state attached the LEMSC's findings to its motion to dismiss, and we consider them here because they are public records that do not require conversion of the motion to dismiss into a motion for summary judgment. *See Mirchandani v. BMO Harris Bank, N.A.*, 235 Ariz. 68, ¶ 7 (App. 2014).

¶18        Those findings, however, belie the state's argument. They do not reflect that the LEMSC considered Fraser's retaliation allegations. Thus, at least based on the record available at the motion-to-dismiss stage, we cannot conclude that the retaliation issue was actually litigated and determined, as required for issue preclusion. *See Legacy Found. Action Fund*, 254 Ariz. 485, ¶ 24.

¶19        Because issue preclusion also depends on a full and fair opportunity to litigate the issues, we also consider whether the LEMSC had authority to consider such allegations. For guidance, we look to our

supreme court's recent decision in *McMichael-Gombar v. Phoenix Civil Service Board*, 256 Ariz. 343 (2023). There, an officer had been suspended for posting social media content that violated city policy, and she filed a collateral action to set aside the suspension on the basis that the policy was unconstitutional. *Id.* ¶ 1. In evaluating whether the collateral action was permissible, the court looked to the authority of the relevant administrative agency — the Phoenix Civil Service Board. The court concluded that the board could apply constitutional principles to "discard[] an interpretation" of the policy "that would violate an employee's rights." *Id*. ¶ 22. But it concluded that the board lacked authority to determine whether the policy itself was unconstitutional. *Id.* This is because the board's power was limited to authority "specifically reserved" to it in the city charter, which did not include deciding the constitutionality of city policies. *Id.* ¶¶ 17-18.

¶20 As applied here, *McMichael-Gombar* demonstrates that the LEMSC could have considered evidence of retaliation in connection with an argument that there was no "just cause," although the record at this stage does not suggest that it did so. But, just as the Phoenix Civil Service Board lacked authority to resolve the constitutional challenge at issue there, the LEMSC lacked authority to resolve the freestanding retaliation claim alleged by Fraser's collateral action.

¶21 Nor has the state explained whether the LEMSC's "just cause" determination might preclude Fraser from proving a claim for retaliation, an issue that appears unclear from our published case law. *Cf. Najar v. State*, 198 Ariz. 345, ¶ 8 (App. 2000) (allowing plaintiff alleging retaliation under A.R.S. § 41-1464 to demonstrate that "legitimate nonretaliatory reason" for termination was pretextual); *Czarny v. Hyatt Residential Marketing Corp.*, 2018 WL 1190051, ¶ 13 (Ariz. App. Mar. 8, 2018) (applying same standard to retaliation claim under Section 23-1501). Thus, given the standards applicable at the motion-to-dismiss stage, we conclude that Fraser did not have a full and fair opportunity to litigate that claim before the LEMSC. We likewise cannot conclude that any retaliation issues were essential to the LEMSC's order, which as noted, is another element of issue preclusion.

¶22 Finally, the state cites the Employment Protection Act itself as precluding Fraser's action. Under Section 23-1501(A)(3)(b), if an employee is terminated in violation of a statute and that statute provides a remedy for its violation, no other remedy is available. In the state's view, the LEMSC's enabling statutes provided Fraser with a remedy for his alleged wrongful termination: seeking judicial review of its order. *See* § 41-1830.16(F) ("Any party may appeal the decision of the law enforcement merit system

council . . . .").  We disagree because, as explained, the LEMSC lacked the authority to review Fraser's retaliation allegations in the first place.

**2. From the available record, the LEMSC lacks authority to consider Fraser's allegations concerning due process, as well as policy and procedure violations**

**¶23**　　　Fraser also alleges that the state committed policy and procedure violations throughout the disciplinary process and that the administrative process violated his due-process rights.  His allegations are vague and do not precisely identify the alleged violations.  But the state did not challenge the allegations' sufficiency in its motion to dismiss, nor did it meaningfully raise the issue on appeal.  As such, we decline to determine their sufficiency here.  *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, ¶ 17 (App. 2007) ("[A]n appellate court will not consider issues not raised in the trial court." (quoting *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503 (1987))).  We instead confine our analysis to whether Fraser's allegations, as pled, fall within the LEMSC's jurisdiction.

**¶24**　　　Viewed through this lens, Fraser's allegations are sufficient.  The definition of "just cause" contained above includes some procedural requirements.  Specifically, the employer must provide the employee proper notice of possible disciplinary action through agency manuals, employee handbooks, and other communications.  § 38-1101(7)(a).  But Fraser's allegations appear to be targeted at the processes employed after the disciplinary proceedings began.  The state has pointed to no authority suggesting that the LEMSC has authority to address these procedural issues.  Nor have we identified any.  As a result, we conclude that Fraser's allegations are outside the scope of the LEMSC's review.

**3. From the available record, the LEMSC lacks authority to consider the POBOR violations alleged by Fraser**

**¶25**　　　Fraser argues that his termination also violated the POBOR, because his discipline for "incompetence" was not initiated with proper notice.  *See* §§ 38-1101 to 38-1120 (POBOR statutes).  The LEMSC's order makes clear that Fraser was not disciplined for incompetence, as DPS had withdrawn it as one of the grounds for his termination.  But again, the state did not argue for dismissal of the wrongful-termination claim on this ground.  We therefore do not consider the issue.  *See Harris*, 215 Ariz. 344,

¶ 17.  We must instead confine our analysis to whether Fraser's collateral action was barred.  *See id.*

¶26  In arguing that it was not, Fraser asserts that the superior court "ignored the protections of the POBOR statutes."  We understand this argument as suggesting that the incompetence allegation violated POBOR notice provisions outside the definition of "just cause."  Fraser does not identify those procedures, but the state did not move to dismiss for failure to do so, which prevents us from considering the issue.  And POBOR does contain notice requirements beyond the definition of "just cause."  For example, before an employer may interview an officer in a disciplinary investigation, Section 38-1104(A)(2) requires the employer to provide a "written notice informing the law enforcement officer of the alleged facts that are the basis of the investigation," as well other issues.  *See also* § 38-1104(D) (employer must provide information requested by officer concerning similar discipline of other officers).

¶27  The state counters that the LEMSC necessarily reviewed DPS's compliance with the POBOR because there is an interplay between POBOR and the statute providing the LEMSC with the authority at issue.  But that position oversimplifies the issue.  Section 41-1830.16(H)(5), the LEMSC, statute, does incorporate the POBOR's definition of "just cause."  But that is the only relevant cross-reference between the two statutory schemes.  *See* §§ 41-1830.11 to 41-1830.16.  Otherwise, nothing in either statutory scheme allows the LEMSC to review an agency's compliance with the POBOR, including the notice requirements of Section 38-1104.  *See City of Sierra Vista v. Sierra Vista Wards Sys. Voting Project*, 229 Ariz. 519, ¶ 19 (App. 2012) ("[C]ourts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions." (quoting *In re Martin M.*, 223 Ariz. 244, ¶ 7 (App. 2009))).

¶28  Here, Fraser's allegation that he did not receive proper notice of the incompetence charge appears to go beyond the notice requirements embedded in "just cause."  *See* § 38-1101(7)(a).  These requirements focus on ensuring that officers are aware of the type of conduct that can lead to disciplinary action.  But they do not address the types of notice needed to initiate such action following an alleged violation.  Rather, as we have explained, that requirement is contained in Section 38-1104.  Because determining whether the state violated this provision is beyond the scope of the LEMSC's authority, the superior court erred in dismissing Fraser's claim.

### B. The superior court erred in dismissing Fraser's Section 1983 claim

¶29　　Fraser next argues that the superior court erred in dismissing his Section 1983 claim, which alleged that the state had violated Fraser's equal-protection and due-process rights by depriving him of the POBOR's protections. In dismissing this claim, the court relied on *Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 176 (App. 1987). In that case, this court concluded that preclusion based on the failure to seek judicial review of an administrative order applies "even to alleged constitutional errors." *Id.* (quoting *Hurst v. Bisbee Unified Sch. Dist.*, 125 Ariz. 72, 75 (App. 1979)).

¶30　　Fraser argues that *Gilbert* is distinguishable because it "dealt with challenges" that "would definitely be appealable," while here, constitutional violations were not at issue in the LEMSC's "just cause" determination. In response, the state argues that Fraser's Section 1983 claim is rooted in its alleged failure to comply with POBOR, and reiterates that the LEMSC had the authority to determine this issue.

¶31　　Again, we agree with Fraser. *Gilbert* quotes *Hurst* for the proposition that preclusion applies to constitutional errors. 155 Ariz. at 176. However, *Hurst* dealt with a statutory scheme that allowed an appellant to appeal an administrative decision to the superior court on the grounds that the order was "[b]ased on violation of any constitutional provision." 125 Ariz. at 392-93; *see also Moulton v. Napolitano*, 205 Ariz. 506, ¶ 20 (App. 2003) (revenue department has authority to apply constitutional doctrines when legislature authorized it to consider "any legal theory, including a constitutional one").

¶32　　Here, by contrast, we have explained that the LEMSC's authority does not extend beyond reviewing whether DPS complied with procedural requirements contained in the definition of "just cause." *See City of Sierra Vista*, 229 Ariz. 519, ¶ 19. Because Fraser appears to allege due-process and equal-protection claims that go beyond this definition, he is not precluded from raising them. Our analysis is consistent with *McMichael-Gombar*, which expressly contemplates a Section 1983 action when an administrative agency lacks the authority to adjudicate constitutional claims. *See* 256 Ariz. 343, ¶ 26.

¶33　　Recent Ninth Circuit case law reaches the same conclusion. *See Jamgotchian v. Ferraro*, 93 F.4th 1150, 1155 (9th Cir. 2024) (state agency decision did not preclude Section 1983 lawsuit when agency lacked jurisdiction to decide constitutional issues). We are not bound by the Ninth

Circuit's reasoning, but we "generally defer to federal courts' interpretation of federal law." *Cimarron Foothills Cmty. Ass'n v. Kippen*, 206 Ariz. 455, ¶ 6 (App. 2003). To the extent it is relevant, this case law further reinforces that Fraser's Section 1983 claim was beyond the LEMSC's authority. Thus, we conclude that the superior court erred in dismissing Fraser's Section 1983 claim.

## CLAIMS FOR DEFAMATION AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

¶34        Fraser also appeals the superior court's dismissal of his two other claims—defamation and intentional infliction of emotional distress—for failure to state a claim. We review de novo the dismissal of a complaint for failure to state a claim. *Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, ¶ 6 (2014). And, as we have explained, "courts must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts." *Coleman*, 230 Ariz. 353, ¶ 9.

¶35        Under Rule 12(b)(6) of the Arizona Rules of Civil Procedure, dismissal of a complaint is appropriate when the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* ¶ 8 (quoting *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, ¶ 4 (1998)). When adjudicating a Rule 12(b)(6) motion, courts look only at the pleading and the "well-pled factual allegations" it contains. *Cullen*, 218 Ariz. 417, ¶ 7. Complaints that solely state legal conclusions, without any factual allegations, do not satisfy the notice-pleading standard. *Id.*

## I.    Fraser has failed to state a claim for defamation

¶36        Fraser's defamation claim arises out of his placement on the "Brady List," which is a list of law enforcement officers who have been accused of professional misconduct. *See Yahwheh v. City of Phoenix*, 243 Ariz. 21, ¶ 2 (App. 2017); *see generally Brady v. Maryland*, 373 U.S. 83 (1963) (prosecutors must disclose exculpatory evidence to criminal defendants); Ariz. R. Crim. P. 15.1 (state's disclosure obligations). However, Fraser does not allege that his placement on the list was defamatory. He instead alleges that the state defamed him by making "false claims" in connection with that placement.

¶37        In defamation actions, plaintiffs must "clearly and specifically allege the content and context of the challenged statements and why and how they were defamatory." *BLK III, LLC v. Skelton*, 252 Ariz. 583, ¶ 16 (App. 2022). Knowing the "precise language" of the alleged statements is

crucial because a court must "analyze whether the statement is objectively verifiable as true or false." *Id.* ¶ 15.

¶38 We agree with the superior court that Fraser's allegations did not meet this standard. On appeal, Fraser argues that he should be entitled to discovery to learn exactly what defamatory statements were made. But as the state points out, Fraser cites no authority supporting the argument that he may obtain discovery to learn whether he has a cause of action. Nor are we aware of any. Without "clearly and specifically" alleging the content of the statements made and why they were defamatory, Fraser fails to state a claim upon which relief may be granted. *See id.* ¶ 16.

## II. Fraser failed to state a claim for intentional infliction of emotional distress

¶39 Fraser also argues the superior court erred in dismissing his emotional-distress claim, which arises out of his allegation that "violations of law and false claims made in the termination process" were outrageous and caused him severe emotional distress. In an action for intentional infliction of emotional distress, a plaintiff must allege: (1) the defendant caused severe emotional distress; (2) by extreme and outrageous conduct; (3) with intent to cause emotional distress or with reckless disregard that such distress would result. *Watkins v. Arpaio*, 239 Ariz. 168, ¶ 8 (App. 2016).

¶40 A court must determine whether the defendant's alleged conduct was extreme and outrageous. *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 258 (1980). Extreme and outrageous conduct is defined as conduct that "go[es] beyond all possible bounds of decency" and is "regarded as atrocious, and utterly intolerable in a civilized community." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (1987) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). In the employment context, it is "extremely rare" to find conduct sufficient to meet this standard. *Mintz v. Bell Atl. Sys. Leasing Intern, Inc.*, 183 Ariz. 550, 554 (App. 1995).

¶41 Fraser argues that the superior court erred by "acting as a trier of fact" because, at this stage in litigation, he has not yet been able to offer evidence. But Fraser misstates the law, as it was indeed the court's role to determine whether the facts he had alleged were extreme and outrageous. *See Watts*, 127 Ariz. at 258.

¶42 Fraser further argues that "evidence of a concerted effort to target" him is an allegation sufficient to find extreme and outrageous conduct. However, as the state points out in response, Fraser's failure to

appeal the LEMSC's order conclusively establishes "just cause" for his termination.  *See Gilbert*, 155 Ariz. at 176 ("No timely appeal having been taken, the decision of the board is conclusively presumed to be just, reasonable and lawful." (quoting *Hurst*, 125 Ariz. at 75)).  We cannot discern how the state's alleged conduct was extreme and outrageous when established findings show "just cause" for Fraser's termination.

**ATTORNEY FEES**

¶43          Fraser requests attorney fees and costs under A.R.S. § 12-341. Because this is not an attorney-fees statute, we deny his request for such fees.  However, upon compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure, we award him all taxable costs on appeal.  *See Henry v. Cook*, 189 Ariz. 42, 44 (App. 1996) ("[T]he party who obtains partial success is entitled to recover all taxable costs.").

**DISPOSITION**

¶44          For the foregoing reasons, we reverse the superior court's dismissal of Fraser's wrongful-termination and Section 1983 claims.  We affirm its dismissal of his claims for defamation and intentional infliction of emotional distress.